ROBERT DONNELLY, Appellant, v. W. L. MITCHELL, Sheriff of Pocahontas County.

Action for Wrongful Attachment and Sale: WRITTEN AGREEMENT
1   HELD A BAILMENT NOT A CONDITIONAL SALE. An agreement that
one shall have the possession and use of personal property on
condition that he pay one-half the purchase price, and compen-
sation for the use of the other undivided one-half and a share
in the profits of such one-half if the purchase price is not paid
and in event same is not paid, then for use of the entire prop-
erty, constitutes a contract of bailment and not a conditional
sale, and in default of payment of the one-half of the purchase
price the party thus obtaining the possessson acquires no in-
terest therein subject to attachment and sale at the suit of a
creditor.

Notice of Ownership: DEFECTS: WAIVER. Defects in a notice of
2   claim of ownership of attached property are waived by subse-
quently giving the sheriff an idemnifying bond.

Pleading: WAIVER OF NOTICE OF OWNERSHIP. It is a sufficient
3   pleading of waiver of notice of ownership of attached prop-
erty to allege that the sheriff required a bond before proceeding,
which was given.

*Appeal from Pocahontas District Court.*—HON. A. D.
BAILIE, Judge.

TUESDAY, FEBRUARY 3, 1903.

ACTION against defendant, as sheriff, to recover value
of property of plaintiff alleged to have been wrongfully
levied on and sold by defendant, as sheriff, under writ of
attachment against one Flynn.   At the conclusion of
plaintiff's evidence the court sustained defendant's motion
to direct a verdict for defendant, and rendered judgment
thereon.   Plaintiff appeals.—*Reversed.*

*Kelleher & Longley* for appellant.

*Healy & Healy* for appellee.

McCLAIN, J.—The property for the wrongful conver-
sion of which plaintiff sought to recover damages consisted

of horses and mules delivered by plaintiff to Flynn in
Wisconsin, and brought by Flynn to Pocahontas county,
Iowa, and there kept and used by Flynn in performing a
railroad grading contract.  There is no question that, if
the property belonged to Flynn, the levy and sale by the
sheriff was lawful.   Plaintiff claims, however, that the
animals belonged to him, and that Flynn was only the
bailee, with a contingent right to purchase a one-half
interest therein on certain conditions, which were not
complied with, while for defendant it is claimed that
plaintiff had made a conditional sale to Flynn, ac-
companied with delivery of possession; and that, as no
written instrument evidencing such conditional sale was
ever executed or recorded, and as the sheriff levied with-
out notice of any reservation of title to plaintiff, the levy
was valid.   It becomes necessary, therefore, to determine
the nature and extent of the respective rights or interests
of plaintiff and Flynn, respectively, in the property.   The
delivery of the animals to Flynn in Wisconsin was in  pur-
suance of a written contract containing the following
stipulations:

"(1) That said Donnelly agrees to pay the purchase
price of eight teams of horses or mules.

"(2) That the said teams are to be used in railroad
grading work, for which said Flynn has a contract with the
Chicago, Milwaukee & St. Paul Railroad Company in the
state of Iowa.

"(3) That the said Donnelly shall receive, on or about
the pay day of each month, from said Flynn, one-half of
what said eight teams have earned during the month last
past, at the rate of $3.50 per working day for each team, less
the cost of keeping said team and the expense incurred
in hiring men to drive, handle, and care for the same.

"(4) That said Flynn hereby agrees to pay to said
Donnelly one-half of the purchase price of said teams on

or before the time when said grading work shall be completed, with interest at the rate of seven per cent. per annum. It being expressly understood that, if the said one-half of said purchase money shall not have been paid when said work shall be completed, then said Donnelly shall receive as compensation for the work done by said teams $3.50 per day, less the expense of keeping them and hiring men to drive, handle, and care for the same.·

"(5) It is hereby further agreed that, in addition to the moneys paid to said Donnelly for the use of said teams as set out in paragraph 3, he shall receive from said Flynn, when said grading work shall have been completed, one-half of the amount of money, to be. computed as follows: Such amount shall bear the same ratio to the net profits of said grading work as the number of teams furnished by said Donnelly—i. e., eight teams—shall bear to the entire number of teams engaged in said work."

For the purpose of showing the circumstances surrounding the transaction, and the interpretation which the parties put upon it at the time, parol evidence was introduced, which, so far as competent, tended to prove that the animals were bought by plaintiff with his own money in carrying out the arrangement evidenced by the contract, and delivered to Flynn, there being no other contract or agreement with reference thereto; that they were brought to Iowa, and used, as already stated; that they remained in the possession of Flynn until levied upon by the sheriff; and that nothing had ever been paid by Flynn to plaintiff for the animals under the terms of the contract above. set out or otherwise. It is to be noticed that there is nothing in the contract to indicate that the animals were sold by Donnelly to Flynn; neither is there any agreement of Flynn to pay Donnelly for them. But it is provided in the fourth division of the contract that Flynn shall pay to Donnelly one-half of the purchase price within a certain time, with the further agreement that plaintiff shall

receive one-half the earnings of the animals for each month, at a specified rate, less cost of keeping and working the teams; and that, in the event that one-half the purchase price is not paid as agreed, then plaintiff is to receive compensation for the entire services of the teams.    And there is a further agreement, evidently based on the assumption that Flynn shall have paid to plaintiff one-half the purchase price as stipulated, for equal division between the parties of the proportional profits made by Flynn by reason of the use of the animals in carrying out the provisions of the railroad grading contract.    We think it is clear that this contract does not evidence a mere agreement by Flynn to repay to plaintiff money advanced in the purchase of these animals.    There is no agreement for repayment, no rate of interest fixed, no stipulation for payment of a share of the profits by way of compensation for use of the money; but, on the other hand, there is an agreement to pay one-half the purchase price, and compensation for the use of the other undivided one-half of the property, with a share in the profits if such part of the purchase price is paid, and, in the event it is not paid, then for the use of the entire property.

The stipulation as to division of profits is evidently imperfect, in that it does not provide how the profits shall be apportioned or disposed of in the event that Flynn does not pay one-half the purchase price as stipulated.    But this defect in the contract does not help out the contention that Flynn was to become the owner of the property, with the agreement to repay to plaintiff the money invested in the purchase of the animals.    We cannot read the contract otherwise than that plaintiff purchased and became the owner of the animals, and delivered them to Flynn under an arrangement by which Flynn might become the owner of a one-half interest therein upon complying with certain conditions.    These conditions not having been complied with, the animals remained the property of plaintiff.

Plaintiff, then, being the owner of the animals at the time they were delivered to Flynn, the question is whether there was a conditional sale of a one-half interest therein, so as to render such interest subject to levy by the sheriff as the property of Flynn, free from any claim of plaintiff, in the absence of the recording of any written instrument evidencing such conditional sale, as required by the provisions of Code, section 2905; it being conceded that the sheriff had no actual notice of plaintiff's rights.

To constitute a conditional sale within the terms of the statute, there must be a delivery of possession to the purchaser, with the intention of passing immediate ownership, subject only to the reservation of title to the seller as security for the purchase money. *Wright v. Barnard*, 89 Iowa, 168; *Gaar, Scott & Co. v. Nichols*, 115 Iowa, 22; *Davis v. Giddings*, 30 Neb. 209 (46 N. W. Rep. 425). If the contract is conditional as to the transfer of ownership to the vendee, so that on his failure to perform the condition no right as owner has passed to him, and no definite obligation to pay the purchase price has accrued, then, instead of the transaction being a conditional sale, such as is contemplated by the statute, the delivery of possession constitutes a bailment only, with a right of purchase. In such a case the vendee has only an executory and conditional agreement for purchase, and until he exercises his right under such agreement he remains merely a bailee. *Austin v. Dye*, 46 N. Y. 501; *Hamilton v. Billington*, 163 Pa. 76 (29 Atl. Rep. 904); *Dunlap v. Gleason*, 16 Mich. 158 (93 Am. Dec. 231).

The decisions in other states as to the distinction between a bailment with right to purchase and a conditional sale are in point, even under our statute, for the statute relates only to sales transferring ownership with reservation of title to the vendor by way of security for the purchase price, and not to transactions which, under the law

1. WRITTEN agreement held a bailment not a conditional sale.

as existing prior to the enactment of the statute, constituted merely a bailment. *Budlong v. Cottrell*, 64 Iowa, 234; *Conable v. Lynch*, 45 Iowa, 84; *Register Co. v. Maloney*, 95 Iowa, 573. It is true that if, without intention to transfer immediate ownership, it is agreed that the person to whom possession is delivered shall have the right to pass title, then a sale by him will be valid. *Wright v. Barnard*, 89 Iowa, 166. But there is no such agreement in this case. In short, there is nothing in this contract indicating that Flynn was to become the owner of even a half interest in these animals unless and until he paid one-half the purchase price within the time agreed upon. The first sentence of division four of the contract in itself seems to import an absolute obligation on Flynn to pay one-half the purchase price; but this he did not do within the time stipulated, and, taking the whole contract together, we think that Flynn had the opportunity merely of becoming a one-half owner, and, in the event of his failure to do so, the ownership remained entire in plaintiff. We come to the conclusion, therefore, that the animals in question were the property of plaintiff at the time they were seized by the sheriff, and therefore that they were not subject to seizure and sale under attachment against Flynn.

It becomes important, therefore, to determine another controversy between the parties as to whether there was failure on plaintiff's part to give notice to the sheriff of his
**2. Notice of ownerseip: defects: waiver.** ownership, such as to defeat his right of recovery against the sheriff. In Code, section 3991, it is provided that the officer is bound to levy execution on any personal property in the possession of defendant, unless he has received notice in writing, under oath, from some other person, his agent or attorney, that such property belongs to him, stating the nature of his interest therein, etc.; and that, while failure to give such notice shall not deprive the party of any other remedy, "the officer shall be protected from all liability by reason of such levy until he

receives such written notice." And in sections 3992, 3993, it is provided that when the officer receives such notice he may require an indemnifying bond, and may refuse to levy, or release the levy if already made before notice is given, if such bond is not furnished. These provisions are applicable in case of levy under attachment. ˙ Code, section 3906.

It appears that, after the levy was made, Flynn, without any authority from plaintiff, but purporting to act as his agent, gave written notice to the sheriff, signed and sworn to by himself, that plaintiff was the owner of the animals, and stating that plaintiff's interest in the property was that acquired by plaintiff from Flynn by virtue of a bill of sale executed by Flynn to plaintiff. This notice was insufficient in two respects: It was not signed and sworn to by plaintiff, nor by anyone authorized by him to act as his agent or attorney; and it wholly misdescribed the interest of plaintiff, for there is no pretense that any bill of sale was ever given by Flynn to plaintiff, the interest of plaintiff, as we have already determined, being that of owner by virtue of the original purchase of the animals. After this notice was served on the sheriff, a good and sufficient indemnifying bond was, however, in fact executed by the attaching creditor of Flynn, and it is now contended for plaintiff that, although the notice was insufficient, any defect therein was waived by the execution of the bond; in other words, that the notice, though defective, served its purpose of inducing the execution of the bond, and that its sufficiency cannot now be questioned. It must be conceded that, had no bond been given, the sheriff would not have been liable to plaintiff for the sale of the property, although in fact it did belong to plaintiff, and not to Flynn. One object of the statutory provision certainly is to protect the officer against liability for the sale of the property levied on as that of the execution debtor, where another owning the property fails to give sufficient notice of his ownership. *Kaster v. Pease,*

42 Iowa, 488; *Gray v. Parker*, 53 Iowa, 505. But, although the notice was insufficient, and, if no indemnifying bond had been given, the plaintiff could not have recovered in this action, yet we think that the giving of the indemnifying bond was a waiver of notice; for, if no bond had been given, the plaintiff might still have served on the sheriff a sufficient notice under which his right would have been protected, and the necessity of doing so was obviated by the giving of the bond.

It is urged that the sale by the sheriff was an emergency sale on account of the supposed perishable nature of the property, and that the plaintiff would not have had time within which to give a further sufficient notice; but we need not consider what plaintiff's rights would have been had there been an emergency sale before he had had reasonable opportunity to give proper notice of ownership. We are compelled to construe the statutes as we find them. It is well settled that, so far as the attaching or execution creditors or the sureties on the bond are concerned, insufficiency of the notice is no defense to an action on the bond. *Whitney v. Gammon*, 103 Iowa, 366; *Waterhouse v. Black*, 87 Iowa, 321.

We s e no reason why the same principle is not applicable in an action against the sheriff, who is protected by such bond. If the bond is valid notwithstanding the insufficiency of the notice, then the sheriff has recourse on the bond, which, it is conceded in this case, is adequate, and in compliance with the requirements of the statute. It is argued that the plaintiff does not plead

3. PLEADING: waiver of notice of ownership.

the execution of the bond as waiver of notice, but the petition expressly alleges that the sheriff, in pursuance of the notice, required an indemnifying bond, and refused to proceed until such bond was furnished, whereupon the bond was given, and it seems to us that this is a sufficient pleading of waiver of notice. In *Murray v. Thiessen*, 114 Iowa, 657, we held

that under allegation of notice plaintiff could not introduce evidence of the execution of a bond, but in the case now before us plaintiff pleaded the execution of a bond.

Our conclusion is that the plaintiff was the owner of the property, and is entitled to maintain an action against the sheriff for wrongful sale thereof, and the judgment of the lower court is REVERSED.