HANDLAN-BUCK MANUFACTURING Co., Appellant, v. WATERLOO DROP FORGE Co. et al., Appellees.

**APPEAL AND ERROR:** Assignment of Errors—Omnibus Assignment. An omnibus assignment of error is insufficient to raise any question. So *held* where the assignment was the naked statement that, "The court erred in admitting the testimony of" (eight named witnesses).

**EVIDENCE:** Declarations—Explanatory of Possession of Property. Declarations of a party while in possession of personal property, explanatory of such possession, as that he holds in his own right or otherwise, are competent, even though the one against whom they are offered was not present when the declarations were made.

**SALES:** Conditional Sales—Sales Under Guise of Lease—Legal Effect of Instrument Controlling. Irrespective of the words employed, if the essential legal effect of an *unrecorded* written contract is to effect a sale of personal property and to make the transfer of title or ownership thereof *depend upon a condition*, it is a conditional sale, and void as to creditors or purchasers of the one in actual possession obtained in pursuance of such contract, when such creditors or purchasers have no notice of such unrecorded contract. Contract analyzed and *held* to constitute a conditional sale and not a lease. (Sec. 2905, Code, 1897.)

**APPEAL AND ERROR:** Review—Questions of Fact—Conflicting Evidence. Under a fair conflict of evidence, the findings of a jury on questions of fact are conclusive with the appellate court. So *held* where the jury found that the defendant did not have notice of a nonrecorded contract of conditional sale.

**SALES:** Conditional Sales—Abandonment of Contract Before Rights of Creditors Attach—Evidence. Evidence reviewed and *held* insufficient to show that a conditional contract of sale had been abandoned and the relation of bailor and bailee substituted before the rights of creditors and purchasers attached.

**TRUSTS:** Express Trusts—Construction of Deed—''Secured Credi-
tors''.   Trust deed analyzed, and *held* not to contemplate that
the trustee would diminish the fund in his possession by recogniz-
ing alleged liens against which he could raise a legal objection.

**SALES:** Conditional Sales—Recording Act—Who Is a ''Purchaser''?
The trustee in a deed of trust of all of grantor's property, duly
authorized and obligated in the deed to sell such property and,
generally, to close up all the affairs of the grantor and to pay all
the creditors of grantor in proportion to their claims, said deed
of trust having been accepted by both trustee and certain credi-
tors, *is a purchaser* within the meaning of Sec. 2905, Code, 1897,
providing that unrecorded conditional contracts of sale are void
''against any creditor or *purchaser*'', without notice.   Such a deed
is, in effect, a mortgage.

**TRIAL:** Instructions—Form, Requisites and Sufficiency—Reference
to Pleading.  Reference to the pleading, *by name*, in the instruc-
tions is not required.  The all-important essential is to fairly state
to the jury the nature of the several disputed questions of fact
upon which it is required to pass.

*Appeal from Black Hawk District Court.*—GEORGE W. DUN-
HAM, Judge.

THURSDAY, JANUARY 13, 1916.

THE opinion states the case.—*Affirmed.*

*J. T. Sullivan,* for appellant.

*Pickett & Swisher, Williams & Clark,* for appellees.

WEAVER, J.—This action at law is in replevin for the
recovery of the possession of a large lot of machinery and
tools of which plaintiff claims to be the absolute and unquali-
fied owner.  There was an answer by the defendant, C. W.
Mullan, denying the alleged ownership by the plaintiff and
setting up a qualified title in himself and right to the pos-
session of the property under a trust deed made to him by
the Waterloo Drop Forge Company to secure payment of
their debts, and stating that he took said title without notice
of any right or claim thereto on the part of plaintiff.  There-
after, the persons named in the caption hereof as interveners

filed a petition of intervention, alleging themselves to be creditors of the Waterloo Drop Forge Company, setting up the transfer of the title to the property to C. W. Mullan in trust for their benefit, and their acceptance of the benefit of the security so provided, without knowledge or notice of any right or claim to the property by the plaintiff. Both trustee and interveners allege that plaintiff's claim is founded upon a reservation of title made in a contract of conditional sale of the property in controversy to the Waterloo Drop Forge Company, which contract or bill of sale was never recorded, as provided by statute, and that such contract, so far as relates to the condition reserved therein, was and is void as against themselves. In reply, plaintiff denies that the contract between itself and the Drop Forge Company was one of conditional sale, and avers that it never parted with the title to the property conditionally or otherwise. There was trial to a jury, which returned a verdict for defendants, and assessed the value of the property at $7,500.

I. The first assignment of error argued by counsel is based upon the testimony of eight witnesses severally named, which testimony is said to have been admitted over the objection of the plaintiff. Strictly speaking, this assignment, being omnibus in character, directed in a single proposition against the testimony of numerous witnesses, without differentiating between them or pointing out the particular respect in which any one of them is objectionable, is insufficient to raise any question for our consideration. But we turn to another division of the brief, and find where counsel has mentioned specifically an objection to inquiries answered by one of the witnesses as follows. It appears that the witness, one Burt, had visited the Drop Forge Company's plant, with a view to investing therein, while the machinery was in the company's possession, and concerning that visit he was asked by defendants' counsel:

1. Appeal and error: assignment of errors: omnibus assignment.

2. Evidence: declarations: explanatory of possession of property.

"Q. I will ask you, Mr. Burt, whether anything was said at the time, by either Mr. Morris or Mr. Rockwell, to the effect or in substance that any of the machinery, tools or appliances that were in the plant were not owned by the Drop Forge Company and not a part of its assets. (Plaintiff objects upon the ground as incompetent, irrelevant and immaterial and upon the further ground that any conversation had there, not in the presence of the plaintiff, could not in any manner bind the plaintiff, and that declarations by officers or employes of the company, not in the presence of the plaintiff, could not be binding upon the plaintiff. Objection overruled; plaintiff excepts.) A. No. Q. I will ask you, Mr. Burt, while Mr. Morris and Mr. Rockwell were showing you about the plant for the purpose of inducing you to become a member of the board of directors or a stockholder, whether they did or did not hold out to you, whether all of the machinery and personal property in the plant was the property of the Drop Forge Company. (Plaintiff objected upon the grounds urged in the previous interrogatory. Objection overruled; plaintiff excepted.) A. The matter was not definitely talked of in that respect to my knowledge and recollection. Q. I will ask you whether anything was said along the lines that they were the owners of all the property which they showed to you at that time. (Objected to by plaintiff for the reasons urged in the former interrogatory of like character. Objections overruled; plaintiff excepts.) A. Nothing that would direct my attention to the fact that they were not the owners of the property."

Even if the line of examination was objectionable, the answers of the witness were of that vague and colorless character from which we could not presume any prejudice to the plaintiff. But the fact that plaintiff was not present or represented at such conversation is not a good objection to the competency of the evidence. The declarations of persons in possession of personal property with reference to the title thereto or explanatory of their possession may properly be

shown.  *Stephens v. Williams,* 46 Iowa 540, 543.  It may
further be said that in this case this line of inquiry was pur-
sued with several other witnesses, and answers admitted with-
out objection or exception.  Concerning the other witnesses
named in the assignment of error, it is sufficient to say that
no exceptions to their testimony appear to have been preserved.

II.   At the close of all the evidence, plaintiff moved for
a directed verdict in its favor on the ground that the contract
by which the Drop Forge Company obtained and held pos-

session of the property was not a contract of
sale, and that it appeared without dispute that
the title thereto had never passed from the
plaintiff.  The motion was denied and error
is assigned thereon.

3. SALES: condi-
tional sales:
sales under
guise of lease:
legal effect of
instrument
controlling.

The contract in question, omitting the formal parts and
the itemized list of machinery, is in words as follows:

"Whereas, Party of the first part is a manufacturer and
agent of various kinds of machines, castings, drills, vises,
planing machines, screw machines and other property which
party of the second part desires to use, and,

"Whereas, Party of the second part desires to pay by
notes for the use of said materials and machines which are
hereinafter specified.

"Now, Therefore, In consideration of the covenants here-
inafter specified, and the sum of One Dollar, paid by party
of the second part to the party of the first part, the receipt of
which is hereby acknowledged, it is agreed between the parties
as follows:

"First.   Party of the first part agrees to allow party of
the second part to use the following described property from
the date of this contract, up to and including the 2nd day of
March, 1911, to wit:  [Here follows itemized list.]

"Second.   Party of the second part agrees to pay party
of the first part Fifteen Thousand Dollars for the use of
said machinery, material, and properties, described in para-
graph first of this contract; said payments to be made Five

Thousand Dollars on the 2nd day of March, 1910, Five Thousand Dollars on the 2nd day of September, 1910, and Five Thousand Dollars on the 2nd day of March, 1911; party of the second part agrees to give its certain promissory notes due on said dates, and for the said amount, to the party of the first part, immediately upon the signing of this contract.

"Third. Party of the second part agrees to pay the premium for the insuring of said property, and agrees to return all of the said machinery and property to the party of the first part, if any of the said notes are not paid on maturity.

"Fourth. Party of the first part agrees to give a bill of sale to party of the second part, for all of the said machines and property, on the 3rd day of March, 1911, provided all of said notes are paid on maturity.

"Fifth. Party of the second part agrees to keep party of the first part advised of the location and whereabouts of all of said property, at all times up to and including said March 2, 1911."

Under this contract, the machinery was delivered to the Drop Forge Company, which made payments thereon from time to time to the amount of about $8,000. The company did not prosper financially, and gradually accumulated a considerable burden of other indebtedness, and plaintiff frequently addressed letters to the company complaining of its failure to pay its notes. It is the plaintiff's further claim that, about December 11, 1911, it entered into an arrangement with the Drop Forge Company by which the agreement contained in the written contract was terminated, and the company agreed to return or redeliver the machinery to the plaintiff, after which time it is the plaintiff's contention that the company held the possession as a mere bailee for plaintiff, having no right, title or property therein. About February 1, 1912, the company's shop containing the machinery was destroyed by fire, but the machinery, though more or less damaged, was still of considerable material value. Imme-

diately after this loss, the Drop Forge Company made and delivered to Hon. C. W. Mullan a deed conveying to him all its "real estate, personal property, choses in action, bills receivable, accounts, rights and credits, goods, chattels, claims, equities and interests", including therein "all machinery, fixtures, tools, implements, furnishings, fittings and equipments of every kind, character and nature, situated or located in or in any manner connected with the land conveyed, or the buildings, shops or erections thereon, including boilers, engines, hammers, forges and all other appliances, equipments, machinery, tools and fixtures upon the lands or in any wise connected therewith or the buildings thereon". The conveyance was expressed to be in trust "to have and to hold said property, all and singular, as trustee of the Waterloo Drop Forge Company and as trustee of all the creditors of the Waterloo Drop Forge Company in proportion to the amount of their respective claims". Under the terms of the trust, Mullan was authorized to: (1) Employ such assistance as he reasonably needed in said business; (2) sell and convey the real estate and personal property; (3) sell and dispose of the fixtures, machinery, tools, implements and appliances generally; (4) collect all claims, accounts and bills receivable owing to the company; (5) settle and compromise any and all disputed claims between the company and other persons; (6) appear for and protect the interests of the company and its creditors in court proceedings; (7) collect all insurance due the company upon policies held by it at that date; (8) compromise and adjust secured claims held by creditors of the company; and (9) wind up and close out the business affairs of the Drop Forge Company and apply the net proceeds of such liquidation to the payment of the company's creditors, holding in due respect the rights of secured creditors.

This trust having been accepted by Mullan, he at once assumed possession of the property, including the machinery in question. It does not appear that the parties to this instrument intended it as a general assignment for the benefit of

creditors under the statutes of this state, and, so far as revealed by the record, no creditor has sought to deny its validity or to compel its settlement in the manner provided for statutory assignments. Its purpose seems rather to have been to preserve the assets of the company for the benefit of its creditors, to obtain such settlements, compromises and adjustments with creditors as should be found practicable, and to that end to apply the property and assets to the pro rata discharge of all valid claims held by creditors electing to acquiesce in or accept the benefit of the security thus afforded.

With the foregoing general outline of the situation before us, we return to a consideration of the contract hereinbefore quoted, under which the machinery was delivered to the Drop Forge Company. Does this writing evidence a conditional sale within the meaning of our recording act, or is it a mere agreement of lease? What is the effect, if any, upon the rights of the parties herein of the failure of the plaintiff to have the same recorded, as provided by the statute (Code Section 2905), which reads as follows:

"No sale, contract or lease, wherein the transfer of title or ownership of personal property is made to depend upon any condition, shall be valid against any creditor or purchaser of the vendee or lessee in actual possession obtained in pursuance thereof, without notice, unless the same be in writing, executed by the vendor or lessor, acknowledged and recorded the same as chattel mortgages."

It is the claim of the plaintiff that the failure to record the contract is immaterial upon any theory, because Mullan, the trustee, and all the interveners had actual notice of the contract and its nature and effect long prior to the making of the deed. There is evidence strongly supporting this contention, but it is met with explicit denial by these parties, and the jury has found for the defendants upon that issue. The finding is conclusive upon us, and we must dispose of the

4. APPEAL AND ERROR: review: questions of fact: conflicting evidence.

appeal on the theory, in this respect, that the trust deed was made and accepted without notice, actual or constructive, of the terms of the agreement between plaintiff and the Drop Forge Company. Notwithstanding the use in the contract of words which, taken from their context, would indicate merely a purpose to lease and not to sell the machinery to the Drop Forge Company, we think it impossible for any candid, disinterested person to read the agreement as a whole and reach any other conclusion than that a sale of the machinery was intended, and that the retention of the title in plaintiff and the right of plaintiff to a return of the property "if any of said notes are not paid at maturity", and the promise of plaintiff to make a formal bill of sale "provided all of said notes are paid at maturity", was neither more nor less than a device by which to secure to plaintiff payment of the agreed price or value of the machinery. This is the direct effect of the decision of this court in *Singer Sewing Machine Co. v. Holcomb,* 40 Iowa 33. In that case, the agreement was in the form of a lease, without any stipulation that upon payment of the amount named as rent the machine should become the property of the vendee or lessee, and we held it competent to prove such stipulation by parol evidence. It was further held that, with such stipulation added to the agreement, the legal effect of the entire contract was to make the transfer of the title "depend upon a condition, namely, the payment of the stipulated sums as they mature", and this was sufficient to bring it within the statutory rule making it void as against subsequent purchasers and creditors without notice, unless duly acknowledged and recorded. The contract in the present case contains an express stipulation for the transfer of the title when the payments called for by the agreement should be fully paid, and therefore no parol proof was necessary to bring it within the rule of the *Holcomb* case. Moreover, even if we should be disposed to treat the agreement as one of lease or as a contract not to be classified as either con-

ditional sale or lease, the necessity of recording it would still remain as against subsequent purchasers and creditors. The statute in express terms is made applicable to any "sale" or "lease" or "contract" in which a transfer of title is made to depend or to become effective upon a condition to be performed in the future. It follows that in this case, the want of notice, constructive or actual, being found by the jury, a verdict for defendants was inevitable, unless we are to say that the answering defendants and interveners are not purchasers or creditors of the Drop Forge Company, within the meaning of the statute.

The rule applied in *Donnelly v. Mitchell,* 119 Iowa 432, and *Gaar, Scott & Co. v. Nichols,* 115 Iowa 223, cited by appellant, is in harmony with our conclusion. In the *Donnelly* case, the alleged purchaser had, at most, something in the nature of an option to buy certain horses or to account to the plaintiff for the earnings of the horses. In the *Gaar* case, the property was not delivered to the purchaser by the seller, but by an unauthorized agent, so that the purchaser's possession was wrongful from the beginning.

Plaintiff claims something for the effect of correspondence already referred to with the Drop Forge Company, early in December before the fire. It appears that, plaintiff becoming weary of the delay in the company's payments, several letters passed between them in which the return of the machinery was discussed, and it is the theory of plaintiff that the written contract was abandoned by mutual agreement, and that whatever interest the Drop Forge Company had acquired in the machinery became reinvested in plaintiff and the possession thereof was thenceforward held by the company as a bailee. But we think that the evidence fails to establish the fact as claimed. The correspondence shows no definite agreement in this respect. The first letter shown in the record concerning this subject is

5. SALES: conditional sales: abandonment of contract before right of creditors attach: evidence.

dated December 5, 1911, in which plaintiff complains that its inquiries have been ignored by the company, and asks the question:

"Now, would you care to make us up a list of what machinery you have up there and other things that belong to the agreement which are still our property, and on this list give us a memorandum of the articles as to whether they have never been used, or whether in good, bad or fair condition. If you do not care to do this for us, let us know and we will send a man up there to attend to it."

To this the company responded, enclosing a list of machinery which they say "we figure belongs to you". That the subject of returning the machinery was not then considered closed between them is shown by a letter of December 11, 1911, in which plaintiff again complains:

"Referring to your letter of December 7th, beg to state that you are giving us the same kind of an excuse as you gave us a year ago. You are not reducing your indebtedness any. You are not living up to your many promises, and unless you can send us a check for at least $1,000 on or before December 18th, we will have to close this matter out, and sell the machinery up there or have it shipped to Chicago or here."

Following this, on December 19, 1911, plaintiff wrote:

"Referring to our letter of December 11th, beg to state that you have not sent the amount asked for, nor have even answered the letter. Under the circumstances, will you kindly make arrangements to discontinue the use of our machinery, as we will make immediate arrangements to either ship it to Chicago or St. Louis."

And again, on December 28, 1911, as follows:

"Could you give us an estimate as to the cost of having someone pack our machinery, hauling and shipping to St. Louis?"

On the next day, the Drop Forge Company wrote plaintiff, giving an estimate of $500 as the probable cost of boxing,

crating and loading the "material to which you hold title in the plant of the Waterloo Drop Forge Company".

This constituted the entire correspondence in evidence upon the matter of surrendering the machinery, and demonstrates that no final agreement or understanding looking to an abandonment of the contract or any change in their respective relations to the ownership of the machinery was ever effected. This is further indicated by the testimony of one of the officers of the company, who, in speaking of the correspondence, says:

"We kept writing the Handlan-Buck Company and kept them from taking the machinery from us. They just let us use the machinery along until the fire."

Another officer testifies that, after the fire, and before the deed of trust, he ordered the Handlan-Buck machinery cleaned and set by itself to be sent to the plaintiff on its order; but, so far as shown, this act, if done, was not in pursuance of any agreement with the plaintiff, and could not, we think, have any effect upon the legal status of the property or the title thereto. This witness also admits that he executed the trust deed, which purported, among other things, to transfer this same machinery to Mullan, and that the machinery was at that time in the company's possession in and upon the premises conveyed to Mullan. The claim made that the contract was abandoned or set aside or that the machinery was retransferred to the plaintiff finds no substantial support in the record.

It is next argued for appellant that the trust deed in express terms recognizes the existence of secured creditors and makes the trust subject to such secured claims, and neither the trustee nor the interveners can be heard to contest the right of plaintiff to the security or preference provided for in its contract.

6. TRUSTS: express trusts: construction of deed: "secured creditors."

This is hardly the reasonable and fair construction of the clause of the deed to which reference is made. Its evident purpose was to authorize the trustee to treat with

persons who may be found to hold valid liens on the company's property and to·obtain the best available compromise or settlement. It was not the purpose of the trust to give any new preference to the secured creditors at the expense of the unsecured, but rather to make the fund available for payment of general claims as large as possible. The trustee could not be expected to diminish that fund by recognizing or giving preference to any alleged lien against which he could raise a legal and proper objection.

But counsel insists, and this, in the judgment of the writer, presents the only debatable question in the case, that Mullan, taking the deed in trust for the use and benefit of the Drop Forge Company and its creditors, is not a subsequent purchaser protected by the recording act, and that he holds the property as the Drop Forge Company held it, subject to the rights of the plaintiff under its contract. If Mullan were to be regarded as a mere assignee in insolvency, under our statute relating to the general assignments for the benefit of creditors, the objection would have to be sustained; for this court has given its adherence to such rule in very many cases. *Roberts v. Austin Corbin & Co.,* 26 Iowa 315, 327; *Gluck Co. v. Therme,* 154 Iowa 201, 204; *In re Assignment of Wise,* 121 Iowa 359, 361; *Arnold v. Grimes,* 2 Iowa 1; *First Nat. Bank of Omaha v. Day,* 150 Iowa 696, 700; *Jenks v. Smith, Lichty & Hilman Co.,* 129 Iowa 139; *Cuddy v. Becker, Mayer & Co.,* 146 Iowa 250, 253; *Meyer v. Evans,* 66 Iowa 179, 183; *Warner v. Jameson,* 52 Iowa 70, 72; *Des Moines Bridge & Iron Works v. Plane,* 163 Iowa 18, 22; *Wackerbarth & Blamer Co. v. Ind. School District,* 157 Iowa 614; *Davenport Plow Co. v. Lamp,* 80 Iowa 722, 725; See, also, Burrill on Assignments (6th Ed.), pp. 483-4.

But Mullan, as grantee in the deed, was not·an assignee in statutory insolvency proceedings in which an insolvent estate was to be settled by him under the direction and approval of the court. The trust deed was, in effect, a mort-

7. SALES: conditional sales: recording act: who is a "purchaser"?

gage by which the company's property was pledged to the payment of the claims of its creditors, so far at least as they should acquiesce therein.

The interveners have accepted the tendered security, and we can see no sound reason why they are not protected by it to the same extent as if the company had made and delivered to them for the same purpose a mortgage in the ordinary form. Had the company made and delivered a mortgage to the interveners, instead of the trust deed to Mullan, its validity as against the unrecorded claim of the plaintiff would be beyond question; and, if such be the case, we recall no rule or principle which would make a trust deed any less effective to the same end.

III. Appellant makes the further point that the court failed to properly state the issues to the jury, because it omitted to inform the jury that plaintiff had filed an answer to the petition of intervention and had also

**8. TRIAL: instructions: form, requisites and sufficiency: reference to pleading.** filed a reply to the answer of Mullan, trustee. It appears to be true that the court failed to say in its charge that plaintiff had filed an answer to the petition of intervention and a reply to the trustee's answer, but this was wholly immaterial and without prejudice to the appellant if the court otherwise fairly stated to the jury the nature of the several disputed questions of fact upon which it was required to pass. Reference to the pleadings by name in the instructions is not required. What the court should state is the issue or issues to be tried, and we find the charge as given sufficiently full and specific in this respect. Other objections to the instructions raise only questions of law which we have already considered in previous paragraphs of this opinion and ruled against the appellant's contentions.

There is no prejudicial error in the record, and the judgment of the district court is—*Affirmed.*

EVANS, C. J., DEEMER and PRESTON, JJ., concur.