## Catherine Christoffel et al., Plaintiffs in Error, v. George N. Lee, Intervenor, Defendant in Error.

### Gen. No. 14,938.

1. CHANCERY—*when jurisdiction lost.* If the controversy involved in the original bill of complaint is settled so that thereafter there remains no ground upon which such bill can be maintained, jurisdiction is lost to appoint a receiver or to hear and determine a controversy presented by intervening petition.

2. PARTIES—*when decree reversed for insufficiency.* A decree rendered pursuant to the prayer of an intervening petition will be reversed if a necessary party is omitted therefrom, and the rights of such party are essential to be determined in order to justify the relief awarded.

3. CHATTEL MORTGAGES—*what defense may be urged against assignee.* Chattel mortgages are not negotiable instruments, and to a foreclosure proceeding predicated upon a chattel mortgage all defenses which might have been urged against the mortgagee may be set up against his assignee.

4. CHATTEL MORTGAGES—*what does not pass by assignment of notes.* A separate guarantee does not pass to the assignee of notes secured by chattel mortgage.

5. DECREES—*what not appropriate upon intervening petition.* Held, that the intervening petition in this case was not germane to the original bill and that its subject-matter would not have been cognizable by way of cross-bill in the cause; likewise, that under no rule or principle of equity practice can it be proper under an intervening petition to obtain the possession of property in the hands of a receiver, to decree foreclosure of a mortgage.

Bill in chancery. Error to the Circuit Court of Cook county; the Hon. GEORGE A. CARPENTER, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1908. Reversed and remanded with directions. Opinion filed March 18, 1910.

**Statement by the Court.** September 12, 1899, Catherine Christoffel and Peter Christoffel filed their bill in the Circuit Court against William G. Mason and the Sunnyside Express Company to enforce a vendor's lien. The bill alleged that up to the 29th day of May, 1899, they were the owners in fee of lot seven in block

three in Ingledew's Addition to Ravenswood; that on the 29th day of May, 1899, they conveyed said property by warranty deed to William G. Mason, the said Mason to assume a mortgage thereon of $2,000; that as a part of the consideration for said transfer the said Mason, as president of the Sunnyside Express Company, agreed to sell and deliver to the grantors in said deed all of the stock and personal property of the said company, and that the said company was and would be free and clear of all indebtedness created by said company prior to the first day of June, 1899; that in consideration of the said Mason delivering the stock and property of the said company to the grantors they transferred and conveyed said real estate to the said Mason, and the said Mason transferred and turned over to the grantors the stock and personal property of the said company, and that they then went into possession of the business of the company and have carried on and transacted the business of the company at the place of business of the company ever since said time.

They further show that after they had been in possession of the said company for two months they found that Mason had entirely disregarded his agreement with them and that he had not, nor had the company paid and discharged the obligations of the company, which were at the time of the transfer owed by the company, and that the assets of the company were liable to be dissipated by the creditors for the purpose of satisfying their claims against the company.

They further show that divers claimants have presented bills against the company which were due and owing at the time of the transfer; that none of the bills have been paid; that there are divers other bills due and owing by the company for goods and labor furnished to the company prior to the first day of June, 1899, which remain unpaid, and that divers other per-

sons have claims against the company for goods lost or stolen prior to the first day of June, 1899.

They further show that the business of the company is in a precarious condition owing to the breach of contract of Mason; that the creditors are seeking payment of their bills and threatening litigation, and that they will be greatly injured in their business and credit unless relieved by the intervention of the court; that the amounts due the creditors of the company are liens in favor of complainants against the property conveyed to Mason, which property ought to be held to answer to the complainants for the debts of the company.

The bill prays for answer, the appointment of a receiver with power to continue the business; that an account may be taken and that the debts of the company existing at and before the first day of June, 1899, may be paid by Mason.

The bill prays for summons, and is signed and verified by Catherine Christoffel.

The court appointed a receiver to take possession of the property of the Sunnyside Express Company, and authorized him to run the business of the company. The defendant Mason entered his appearance and on September 22, 1899, by agreement of the parties the bill was dismissed as to Mason, and as to the real estate therein described, the order reciting that the complainants had no lien, claim, or demand on the real estate described in the bill.

On that date an agreement was entered into between Mason and Catherine Christoffel and the Sunnyside Express Company as follows:

"Memorandum of agreement made and entered into this 22nd day of September, A. D. 1899, by and between William G. Mason, party of the first part, of the City of Chicago, County of Cook and State of Illinois, and J. W. Sutton, as attorney for Catherine Christoffel and the Sunnyside Express Company, party of the

second part, of the City of Chicago, County of Cook and State of Illinois.

"Witnesseth, that, whereas, the said William G. Mason heretofore obtained by purchase or otherwise all of the stock, good will, chattels and business of the Sunnyside Express Company, and transferred the same to Catherine Christoffel, with the understanding and agreement that at the time of the transfer the Sunnyside Express Company was, or would be, free and clear of all incumbrance on the first day of June, A. D. 1899, except a mortgage thereon for the sum of nineteen hundred and fifty ($1,950) dollars, which was assumed by the said Peter Christoffel and Catherine Christoffel;

"And, whereas, the said Sunnyside Express Company was, on the 12th day of September, A. D. 1899, placed in the hands of a receiver, together with the property heretofore conveyed by Peter Christoffel and Catherine Christoffel to William G. Mason;

"And, whereas, it is desired by the party of the first part hereto to secure a release of the said property heretofore conveyed by Peter Christoffel and wife, described as Lot seven (7), Block three (3), Ingledew's Addition to Ravenswood, from any lien herein;

"Now, therefore, it is agreed by and between the parties to this agreement that the said William G. Mason for himself, and the said J. W. Sutton, acting for Catherine Christoffel and Peter Christoffel and the Sunnyside Express Company and the receiver, that the said William G. Mason shall assume and pay all the debts due and payable by the Sunnyside Express Company which accrued prior to the first day of June, A. D. 1899, and upon a final accounting as of the first day of June, A. D. 1899, the said Sunnyside Express Company agreed to pay all the debts found to be due to the said William G. Mason by reason of the purchase of the said business from the said William G. Mason.

"In consideration thereof, the said J. W. Sutton, as agent and attorney aforesaid, hereby agrees to release the said Lot seven (7) in Block three (3) in Ingledew's Addition to Ravenswood from any lien cre-

ated by said suit, and hereby also agrees to dismiss the bill herein as to the said William G. Mason.

"It being the understanding and agreement between the parties hereto that all technicalities as to the form or right of agency be waived.

(Signed) WILLIAM G. MASON,
J. W. SUTTON."

On December 6, 1900, George N. Lee filed in the cause his verified intervening petition as follows:

"In the Matter of the Sunnyside Express Company, a Corporation, etc., Now Pending in Said Court.

"Your petitioner, George N. Lee, respectfully represents unto your honors that on the 1st day of June, 1899, the said corporation made and executed and delivered its certain twenty-four (24) promissory notes, payable to the order of R. C. Sturgeon aggregating the sum of nineteen hundred and fifty ($1,950.00) dollars together with interest thereon at the rate of 6 per cent per annum, and that for the better securing of the payment of said notes, the said Sunnyside Express Company on the same day made, executed and delivered its certain chattel mortgage covering certain personal property of the said express company, which said notes and mortgage are ready to be produced in court on the hearing hereof; that thereafter your petitioner purchased the said mortgage for a valuable consideration, together with the notes secured thereby, and is now the legal holder and owner of the said notes and mortgage, and that the property so covered by the said chattel mortgage is now in the possession and under the control of one............................Haide; that since the date of the purchase of said mortgage by your petitioner, default has been made by the said company and by the said receiver in the payment of certain of the notes and the interest thereon secured by said mortgage and that therefore and according to the terms of said mortgage the whole of the same is now due and payable, and your petitioner therefore prays that an order may be entered directing the said receiver to turn over to him, your petitioner, all of the property described in the said mortgage.

"Your petitioner further shows unto the court that the said property is meager and scant security for the

sum of money mentioned in the said notes and mortgage, and that the Sunnyside Express Company is at the present time insolvent and totally unable to pay its just debts.

"Wherefore your petitioner will ever pray, etc.
(Signed)    GEORGE N. LEE."

Complainant, Catherine Christoffel, filed her answer to the petition in which she admits the existence of a paper purporting to be a chattel mortgage signed by the company by William G. Mason, president, attest Edgar Steele, secretary, but denies that on the date of its execution the said Mason was president or the said Steele secretary of the company, or that either of them had any power by virtue of their reputed offices, or by virtue of any power conferred upon them by the board of directors of the company to execute or deliver the chattel mortgage; admits that at the time of the execution of the mortgage certain reputed notes were executed by said Mason and Steele, reputed to be secured by the mortgage, but denies that they had any right or authority to bind the company or to sign the name of the corporation to the notes; denies that Lee purchased the mortgage and notes for a valuable consideration, and is now the legal owner and holder thereof, but alleges that Lee obtained the same, if at all, entirely without consideration; that Lee obtained the notes and mortgage from Grant Newell, former counsel of William G. Mason, who delivered the same to Newell for safekeeping, and therefore the said Newell was the gratuitous bailee of Mason, and at the time of the delivery of the mortgage and notes to Newell by Mason all equities exising between the defendants and Mason had been paid in full, and that the said Newell and Lee had knowledge thereof; admits that the Sunnyside Express Company was placed in the hands of a receiver on the 12th day of September, 1899, but that in the year 1903 the Secretary of State of the State of Illinois canceled the charter of said company, since which time the company ceased to

do business as a corporation, but that the defendant carried on the business as an individual; that neither the notes nor mortgage are exhibited in the intervening petition, but upon information the defendant states that the mortgage was not properly acknowledged and recorded, nor were the notes secured thereby properly executed as required by the statute; that for a long time prior to the first day of June, 1899, the Sunnyside Express Company had ceased to be a corporation.   While the stock book of the company may have disclosed stock in the names of divers persons, as a matter of fact all of the stock was owned by Mason, who was the president, secretary, board of directors and stockholders of the company; that no meeting of the board of directors was ever held authorizing the president and secretary to execute the mortgage, and even if said authorization had been properly made it was *ultra vires* and void as being in contravention of the powers of the board under the charter of the corporation; that all the stock, good will and property of the company were turned over by Mason to the Christoffels on the first day of June, 1899, and therefore at the time of the execution of the mortgage neither Mason nor Steele had any stock in the company, and therefore neither of them could act as president or secretary of the company, nor could they legally bind the company by contract or otherwise; that immediately after the filing of the intervening petition, a motion was filed to strike the intervening petition from the files, which motion was denied, and a demurrer was then filed to the intervening petition on the 29th day of December, 1900; that the defendant expended large sums of money to pay off numerous debts incurred by the company before the time it was sold to defendant, which debts Mason had, before that time, agreed to pay; that upon an accounting with Mason it was agreed between the parties that in consideration of the payment by defendant of debts out-

standing against the company before the first day of
June, 1899, the mortgage should be canceled, and there-
upon Mason executed and delivered a receipt in full
for all moneys due on account of said transaction,
which was intended by the parties to cover the chattel
mortgage; that defendant then devoted all her time to
the management of the business, hiring and discharg-
ing employes, making contracts, buying horses to re-
place dead ones, adding new horses and wagons to the
business as it increased by her efforts, rebuilding the
barn which had collapsed, and devoting all her time
and energy to the maintenance and upbuilding of the
business, until now it is in a flourishing condition; that
defendant increased the business by her energy, think-
ing any claim by reason of the mortgage had been fully
paid and satisfied; that she was lulled into security by
reason of the fact never since the 29th day of Decem-
ber, 1900, has the intervenor pressed his claim; that
this delay of over four years was laches on the part
of the intervenor, and defendant was lead to and did
believe that the intervenor had knowledge and ac-
quiesced in the settlement heretofore made between
her and Mason, and therefore by reason of such delay
and laches the intervenor ought in equity to be barred
from any action on the notes and mortgage; that the
notes were made without consideration; that R. C.
Sturgeon, the payee in the notes, never paid any money
consideration therefor, nor did the company receive
benefits of value as a consideration therefor; but that
Sturgeon was a mere figurehead, and in reality the
notes and mortgage were made by the reputed presi-
dent of the company, William G. Mason, to R. C. Stur-
geon, and immediately endorsed by Sturgeon, no
money or other valuable thing passing to Mason, the
real effect being the execution of the mortgage and
notes by the president of the company to the president
of the company, which in law and equity rendered the
whole transaction void; neither admits nor denies any
allegations not specifically admitted or denied, but

calls for strict proof; prays that the answer may stand as the answer of all defendants, and prays the same advantage as if demurrer had been filed.

The default of Peter Christoffel for want of answer to the petition was entered; and the petitioner filed a replication to the answer of Catherine Christoffel. On May 12, 1905, the cause was referred to a master "to take proof of all the material allegations in the said bill contained and report the same to this court with his opinion on the law and the evidence."

The master reported making the following findings of facts and conclusions of law:

"1st.   That on the first day of June, 1899, the Sunnyside Express Company, by its president and secretary, executed twenty-four promissory notes payable to R. C. Sturgeon, twenty-three being for $60 each and payable in twenty-three consecutive months, and one note for the sum of $570, payable twenty-four months after date, all bearing interest at the rate of six per cent per annum, the interest being evidenced by four interest notes for $53.10, $42.30, $31.50 and $20.70, respectively, and payable in six, twelve, eighteen and twenty-four months after date.

"2nd.   That to secure the payment of these notes the company, by its president and secretary, by its chattel mortgage sold to R. C. Sturgeon the chattels of the company, said mortgage being acknowledged before John A. Mahoney, a Justice of the Peace, on the first day of June, 1899, and recorded in the recorder's office of Cook county on the same day.

"3rd.   That in default of the payment of any of the notes secured by the said mortgage the whole amount should become due at the option of the mortgagee, and the mortgaged goods sold at public or private sale, with or without notice, the surplus, if any, after paying the mortgage debt, to be paid to the mortgagor or its legal representatives.

"4th.   That notes No. 3 and 4 for $60 each, No. 7 for $53.10, Nos. 9 and 11 for $60 each, No. 21 for

$31.50, Nos. 22, 23, 24, 25 and 26 for $60 each, No. 27 for $570 and No. 28 for $20.70 are unpaid.

"5th. That George N. Lee, the intervening petitioner, is the legal holder and owner of the notes and chattel mortgage.

"6th. That the Sunnyside Express Company is indebted to the intervening petitioner, Lee, on account of said notes and accrued interest in the sum of $1,900.95.

"7th. That William G. Mason was originally the legal holder and owner of said notes and mortgage, but that he became involved in litigation and required the services of Grant Newell, a lawyer, and to secure the fees of said Newell, Mason delivered the mortgage and notes to Newell, who accepted them on account of legal services.

"8th. That Newell tried to collect the same, and after assuring himself that they were *bona fide,* sold the mortgage and notes to George N. Lee, the intervening petitioner, for $750 in cash.

"9th. That Grant Newell rendered legal services to William G. Mason, and upon a subsequent accounting Newell made an allowance to Mason for the notes and mortgage, and also received a balance in cash from said Mason on account of legal services.

"10th. That defendant's allegation that the notes and mortgage were issued illegally and without consideration is not sustained by the evidence.

"11th. That the evidence does not support the various allegations of the defendant's answer.

"MASTER'S CONCLUSIONS OF LAW.

"My conclusions of law are, first, that there is now due to George N. Lee, as legal holder and owner of said notes and mortgage, the sum of $1,900.95, as principal and interest, evidenced by said notes, and that the mortgage is a first and superior lien upon the chattels mentioned in the mortgage.

"Second. That if the Sunnyside Express Company or some one of the defendants do not pay said amount

to the petitioner within such time as the court may direct that said property be sold, the proceeds of the sale to be applied to the satisfaction of the amount due Lee, 'and that the said Lee may have such other and further relief herein as he may be entitled to.' "

Objections were made to the master's report, and by order of court they were ordered to stand as exceptions thereto. On hearing of the report on exceptions the following decree was entered:

"That the allegations of the intervening petition are true; that the court has jurisdiction of the parties and subject matter; that the equities are with the intervening petitioner; that Catherine and Peter Christoffel bought all the property covered by the chattel mortgage from the Sunnyside Express Company, and agreed to pay the debts secured by the mortgage; that there is due from the Sunnyside Express Company and Catherine and Peter Christoffel to the intervening petitioner for principal and interest the sum of $2,142.67.

"It is therefore ordered that the Master's report be approved and the exceptions taken by the defendants thereto be overruled.

"It is further ordered that the Sunnyside Express Company and Catherine Christoffel and Peter Christoffel pay to George N. Lee, within five days, the sum of $2,142.67, with lawful interest from this date until paid, and the costs.

"It is further ordered that in default of payment being made as aforesaid, the property mentioned in the mortgage be sold at public sale to the highest and best bidder; Wm. F. Cooper is hereby appointed Special Master to execute the decree; that he give notice of the time and place of sale; and that the receiver turn over to the purchaser or purchasers all of the property purchased by them; out of the proceeds he shall retain his fees, pay the costs of court, and out of the remainder pay the intervening petitioner $2,142.67, with interest; if the remainder shall not be sufficient to pay petitioner he shall apply it to the extent it will reach; if the property shall sell for more than sufficient to pay these amounts the surplus shall

be turned into court to abide the further order thereof.

"It is further ordered that if the moneys derived from the sale shall be insufficient to pay the amounts due, the Master shall report the deficiency to the court and thereupon the Sunnyside Express Company and Catherine Christoffel shall pay petitioner the amount of the deficiency with interest, and that he shall have execution therefor."

This writ of error is prosecuted to reverse the decree.

J. W. Sutton, for plaintiffs in error.

William English, for defendent in error.

Mr. Justice Smith delivered the opinion of the court.

The record before us presents an unusual jumble of pleadings, orders and practice. It shows that ten days after the bill was filed, September 22, 1899, the controversy involved in the original bill of complaint was settled, and that there remained thereafter no ground upon which the bill could be maintained, or upon which it could serve any legal purpose. Yet, a receiver of all the property of the Sunnyside Express Company was continued in charge of the property and business of the company for years thereafter. After the vendors' lien of the complainants was settled and adjusted, and the property upon which the complainants asserted the lien was released by an agreed order of court, and the bill was dismissed as against the defendant Mason, it apparently was maintained as a stockholders' bill to protect the company and its property against the creditors of the company. The case thus fell under the condemnation of The People v. Weigley, 155 Ill. 491, and the court was without jurisdiction to entertain the case. True, we have nothing to do with the main case on this appeal further than to pass upon the decree on the intervening petition,

but, if the court had no cause before it over which it had jurisdiction, the intervening petition did not give the court jurisdiction to hear and determine anything.

The order of reference to the master was, "to take proof of all the material allegations in the said bill contained and report," etc. On the hearing before the master no evidence was offered in support of the bill. The hearing before the master was upon the intervening petition, which had not been referred to the master. The master's report was upon the claim of the intervening petitioner, and the decree followed the report.

The intervening petition names no parties defendant. It sets up the purchase and ownership of the notes and chattel mortgage securing the same by the petitioner, and that the property covered by the mortgage is in the possession of one Heide, not describing him as receiver or otherwise, and that there had been a default in the payment of certain of the notes since petitioner purchased them; and according to the terms of the mortgage the whole sum represented by the notes was due and payable; and prays for an order on the receiver to turn over to the petitioner the property. No rule was entered requiring any one except Catherine and Peter Christoffel, who had filed a demurrer to the petition, to answer the petition, and no answer was filed by anyone except Catherine Christoffel, who did not have possession of the property. The Sunnyside Express Company was not a party to the petition, and its rights to the property referred to in the petition were not litigated or settled. It necessarily follows that as to the Sunnyside Express Company the decree is erroneous and must be reversed. But, beyond that no consideration appears in the record moving to the company for the notes secured by the chattel mortgage. The notes and mortgage were executed by W. G. Mason as president, and Edgar R. Steele as secretary of the corporation, to R. C. Sturgeon, but it does not appear that the company was indebted to Sturgeon or Mason or that these instruments

were executed and delivered in the ordinary course of the business of the express company. The only inference from what appears in the record is that the notes were executed in connection with, and for the purposes of, the sale of the real estate described in the bill of complaint from complainants to Mason. The notes appear to have been endorsed over at once without recourse by Sturgeon to Mason. They were made to represent, apparently, an indebtedness between the Christoffels and Mason in the trade between them, of May 29, 1899. There is no evidence that the company owed Mason this indebtedness or any part of it. No actual consideration is claimed in argument. The facts shown warrant the conclusion that there was no consideration for the notes and mortgage and this would be available by the company as a defense against the mortgage either in a foreclosure of the mortgage or in a proceeding to obtain possession of the property under the mortgage for the purpose of foreclosing. The express company was, therefore, vitally interested in the proceedings under the intervening petition, and should have been made a party to the petition and jurisdiction obtained over it.

The petitioner Lee took the chattel mortgage subject to all defenses in favor of the express company. C. D. & V. Ry. Co. v. Loewenthal, 93 Ill. 433.

The assignment of the notes secured by the mortgage did not carry an assignment of the separate guarantee or assumption of Catherine Christoffel and contained in the agreement of September 22, 1899, to the petitioner Lee or for his benefit. We know of no authority for holding upon the facts in this case that the separate assumption or guarantee passed by the mere assignment of the notes so as to make Mrs. Christoffel liable for the payment of the mortgage indebtedness in a proceeding of this character. Nor do we think Mrs. Christoffel or the Sunnyside Express Company in any event liable by estoppel for any deficiency in the sale of the property for the payment of

the mortgage debt in this proceeding. Hence the decree in providing for the payment by Mrs. Christoffel and the Sunnyside Express Company of the amount of the deficiency with interest is erroneous.

The petition properly prays for an order directing the receiver to turn over to the petitioner the property described in the mortgage. It does not ask for any other or further relief. It does not pray for a foreclosure of the mortgage. Such relief was not germane to the original bill and would not have been proper under a formal cross-bill filed for that purpose for that reason. Under no rule or principle of equity practice could it be proper under an intervening petition to obtain the possession of property in the hands of a receiver to decree foreclosure of a mortgage. The decree does not answer or respond to any pleading in the cause which was or could be properly filed. Rosenbleet v. Rosenbleet, 122 Ill. App. 408; Bremer v. C. & C. Canal & Dock Co., 123 Ill. 104.

The decree is reversed and the cause is remanded with directions to dismiss the intervening petition, but without prejudice to the right of the intervenor to proceed at law or in equity for relief respecting his rights, if any.

*Reversed and remanded with directions.*