Slimmer & Thomas, Appellees, v. Joe Lawler et al., Appellees; Brooks Brothers et al., Appellants.

MARCH 13, 1928.

*Ira Jones,* for Eric Josten and George Ulrich, appellants.

*J. E. Williams,* for Brooks Brothers, appellants.

*Smith & Feeney,* for appellee.

WAGNER, J.—On May 22, 1924, the defendant Joe Lawler, at St. Paul, Minnesota, purchased from Slimmer & Thomas 180 head of steers, and executed unto the plaintiff his promissory note for the sum of $11,836.98. On the same day, and as a part of the same transaction, as security for the payment of said note, he executed a chattel mortgage upon the cattle. In said instrument, the description of the cattle is as follows:

"One hundred eighty (180) steers, two and three year old, various colors, each branded with the letter T on the left hip. These cattle are now in possession of the said Joe Lawler in the

Union Stockyards at South St. Paul, Minnesota, and are this day to be shipped to Garner, Iowa, and thereafter kept on Section 4, in Township 22 Range 95 in Cerro Gordo County, Iowa. These cattle were this day purchased by the said Joe Lawler of the said Slimmer & Thomas and this mortgage is given to secure payment of the purchase price of same. The above described chattels are now owned by Joe Lawler and are free from all incumbrances and are now in his possession as stated and to be in said Cerro Gordo County, Iowa.''

It is shown by the record that the defendants Joe Lawler and A. R. Butler were both interested in this business venture. The note representing the purchase price of the cattle was forwarded to Butler, who resided at Garner, Iowa, and by written indorsement on the back thereof, he guaranteed the payment of said note. On July 15, 1926, the date of the rendition of the decree, there was due and owing on said note the sum of $2,831.20. The aforesaid chattel mortgage was filed in the recorder's office of Cerro Gordo County, Iowa, on May 23, 1924. It was not recorded, but presumably indexed in conformity with our statutory law. Immediately after the purchase of the cattle by Joe Lawler, they were shipped to Thornton, Iowa, instead of Garner, Iowa, and were placed in a pasture which defendant Butler had rented from Wood Brothers, in Grimes Township, the legal description of which is as follows: Section 4, Township 94 north, Range 22 west. The cattle were kept in this location for some time, many of them having been sold, and the proceeds applied upon the aforesaid note. The question of the sufficiency of the description of the cattle in said mortgage will be hereafter considered.

Butler was a banker at Garner. He was a silent partner with Lawler in his purchases and sales of cattle. While he did not join as a mortgagor in the aforesaid mortgage, he had actual notice or knowledge of its execution.

Forty-four of the 180 head of mortgaged cattle were ultimately taken to the Brooks farm in Section 27, Township 95, Range 22. Brooks Brothers rendered service in caring for these cattle, as well as other cattle owned by Lawler and Butler, receiving compensation therefor. On April 13, 1925, Butler sold said 44 head of steers to Brooks Brothers. He, as payee, received a note from Brooks Brothers, which was secured by a chattel

mortgage for the purchase price upon said 44 head of steers. The sufficiency of the description in this latter chattel mortgage is in no way questioned. The note of Brooks Brothers to Butler became due on December 1, 1925. On July 24, 1925, Butler sold the $2,835 note to Eric Josten and George Ulrich, and by written assignment assigned to them the latter chattel mortgage. Josten and Ulrich are good-faith purchasers of the note for value (having paid full value), and had no actual notice of the mortgage from Lawler to Slimmer & Thomas.

To set out all of the testimony would make this opinion quite lengthy, but the facts are such that we are abidingly satisfied that Brooks Brothers had knowledge of facts sufficient to put them upon inquiry as to the existence of the mortgage from Lawler to Slimmer & Thomas, and we find that they had actual notice of said mortgage. Brooks Brothers assisted in unloading the cattle at Thornton, and both Lawler and Butler were present when the cattle were taken to the Woods' pasture. Lawler stayed with the Brooks family for quite a period of time, in looking after his interest in the cattle business. The Brooks were in the employ of Lawler and Butler in caring for the cattle. On January 28, 1925, Boyce, a collector for Slimmer & Thomas, together with Lawler and Butler, visited the Brooks' farm, where the cattle were viewed, and where the elder Mr. Brooks, as we believe, was shown the Slimmer & Thomas mortgage. At a later conversation with Boyce in November, 1925, Mr. Brooks told Boyce that he supposed that the mortgage on the cattle had been paid; that he understood that Lawler had paid it. The elder Mr. Brooks admits that he had an interest in the partnership of Brooks Brothers at the time of the trial, but denies any such interest at the time of the aforesaid transaction and conversation. According to the testimony of Brooks, Brooks Brothers consisted of Cyrus, James, and Harold Brooks, all being single, and aged, respectively, 26, 20, and 17. The farm operated by the Brooks Brothers was a large one, owned by the Northwestern Life Insurance Company. The three boys lived at home, with their father and mother. It is hardly believable that the father and mother were living off their minor sons, as a matter of gratuity. The facts and circumstances surrounding the entire transaction are such that we believe that Brooks Brothers, —no matter how many of them may have constituted the part-

nership,—prior to the execution of the latter mortgage, were not innocent of the existence of the mortgage from Lawler to Slimmer & Thomas.

In November, 1925, the cattle were shipped by Brooks Brothers from Hurley to Chicago, in the name of A. N. Grimm, and there sold; and the proceeds of sale, in the amount of $3,413.24, are on deposit in the Cerro Gordo State Bank, and it is for this sum that the parties to this legal quarrel are contending.

On November 23d, the elder Brooks informed Boyce that he would produce the cattle to him at Klemme for shipping purposes on November 28th, and on that date, Boyce was at Klemme when cattle were delivered, other than those upon which Slimmer & Thomas held a mortgage. The mortgaged cattle had been shipped to Chicago, as aforesaid, and the testimony by one of the Brooks boys is that:

"We, Brooks Brothers, talked to Mr. Grimm, and got him to ship them for us in his name. We made no effort to get the check from the bank after it came back. * * * From what we heard, we did not know just who the money might belong to, and we figured that we would put the money where it would be safe until it was found out and settled who it should be paid over to. It was placed in the Cerro Gordo State Bank for the purpose of being applied on the note, and whoever was determined to be entitled to it."

Both Slimmer & Thomas and Josten and Ulrich are seeking to hold the fund for the payment of their respective notes.

We are aware that it is the general rule that, where the mortgaged chattel property is sold without the consent of the mortgagee, the lien of the mortgage does not attach to the proceeds of such sale, and the proceeds cannot be followed by the mortgagee and a lien enforced against them. See *Jones v. Home Sav. Bank*, 200 Iowa 1186, and cases therein cited. But in this case, the thought and intention of Brooks Brothers appear to have been that the proceeds should be placed in the Cerro Gordo State Bank for the purpose of being applied, or paid, to whomsoever it should be determined to be entitled to it. Both Slimmer & Thomas and Josten and Ulrich are endeavoring in this proceeding in equity to impress a trust upon the fund held by the bank.

The bank is a party to the litigation, and will be bound by the adjudication.

The real contention in this litigation is, Whose claim is entitled to priority under their respective mortgages,—that of Slimmer & Thomas, or that of Josten and Ulrich? The answer to this question must be determined by our recording statute and the facts of the case. Section 10015 of the Code of 1924 provides:

"No sale or mortgage of personal property, where the vendor or mortgagor retains actual possession thereof, is valid against existing creditors or subsequent purchasers, without no-  tice, unless a written instrument conveying the same is executed, acknowledged like conveyances of real estate, and such instrument, or a duplicate thereof, is duly recorded, or filed and deposited with the recorder of the county where the property shall then be situated, or if the mortgagor be a resident of this state, then of the county where the holder of the property resides."

The Slimmer & Thomas mortgage was filed for record in accordance with the above and foregoing statute. The property remained in the possession of Lawler. Lawler's possession became the possession of a partnership, consisting of himself and Butler, as a silent partner. It is obvious that Brooks Brothers was a subsequent purchaser, within the meaning of the recording statute; but since Brooks Brothers, the mortgagor in the second mortgage, and Butler, the mortgagee in said mortgage, both had actual notice of the Slimmer & Thomas mortgage, neither of said parties could prevail as against the first mortgage. Were Josten and Ulrich, assignees of Butler, purchasers, within the meaning of the law? They had no actual notice of the Slimmer & Thomas mortgage; they were innocent good-faith purchasers for value of the note executed by Brooks-Brothers to Butler, which note is negotiable. However, it is manifest that the question we are now considering must be determined under the recording statute, and not under the Negotiable Instrument Law. The latter applies to the note, and the former to the assignment of the mortgage. If Brooks Brothers had borrowed the money from Josten and Ulrich, and given the chattel mortgage direct to them, and paid the money thus obtained to Butler, there would be no question that they would be subsequent purchasers; as we

have repeatedly held that a mortgagee is a purchaser, within the meaning of the law. It is contended by Slimmer & Thomas that the rights of Josten & Ulrich are no better than would be the rights of Butler, had he retained the note and mortgage, and that they are chargeable with the notice which was possessed by the assignor. They rely upon *Hodson v. Eugene Glass Co.*, 156 Ill. 397 (40 N. E. 971); *Oster v. Mickley*, 35 Minn. 245 (28 N. W. 710); *Anderson v. South Chicago Brew. Co.*, 173 Ill. 213 (50 N. E. 655); *Christoffel v. Lee*, 153 Ill. App. 395; *Johnson v. Carpenter*, 7 Minn. 176; *Hostetter v. Alexander*, 22 Minn. 559. Regardless of the holding in other states, we feel bound by our decisions. Our recording statute, with reference to instruments affecting real estate,—Section 10015, Code of 1924,—in so far as subsequent purchasers are concerned, is identical with the one relating to transfer of personal property. In the early case of *Sims v. Hammond*, 33 Iowa 368, this court held that a real estate mortgage is a mere chattel interest, and though it is assignable, the assignee stands in no better situation than did the mortgagee, his assignor. However, in the later case, *Raymond v. Whitehouse*, 119 Iowa 132, referring to *Sims v. Hammond*, supra, we said:

"Ordinarily the assignee of a mortgage has no greater rights than his assignor."

We there said:

"A mortgagee of real property is treated as a purchaser, under our recording acts, and is entitled to rely on the records as they exist when he parts with his money. * * * If a mortgagee is to be treated as a purchaser, and is entitled to rely on the records, we see no reason for holding that his bona-fide assignee for value may not rely on them. Indeed, we think he may. * * * It must be borne in mind that we are not dealing with the law merchant, or with the rules ordinarily applicable to assignments of choses in action, but with the effect to be given our recording acts * * *."

In *Central Tr. Co. v. Stepanek*, 138 Iowa 131, we held that the assignee of a chattel mortgage is a purchaser, within the contemplation of the recording act, saying:

"It is a well-settled proposition that a subsequent mortgagee is a purchaser, within the meaning of this statute. * * * If a mortgagee be a purchaser, within the meaning of the statute,

there is no reason for denying that character to the assignee of the mortgage.''

It thus becomes manifest that Josten and Ulrich are purchasers, and that they are not affected with the notice that was possessed by their assignor. And having no actual notice of the  Slimmer & Thomas mortgage, they must prevail, unless they had constructive notice of their rights under their mortgage. The assignees of the latter mortgage contend that the description of the steers in the first mortgage is insufficient, and that the record thereof does not afford constructive notice. On the other hand, the plaintiffs contend that the description is sufficient, and rely upon the late case, *Wertheimer & Degen v. Shultice,* 202 Iowa 1140; but we hold that the *Wertheimer* case and the instant case are not analogous, and are clearly distinguishable. In the *Wertheimer* case, we held that an erroneous statement in a chattel mortgage as to the location of the property is not *necessarily* fatal. We there reaffirm our previous pronouncements that the description is sufficient if it will enable third persons, aided by inquiries which the instrument itself indicates and directs, to identify the property.

Now let us examine the description in the plaintiff's mortgage. The steers were purchased in St. Paul; they were to be shipped immediately to Garner, Iowa, and thereafter kept on Section 4, Township 22, Range 95, in Cerro Gordo County, Iowa. One's first impression would be that the township and range are reversed, and that the description of the land where they were to be kept was intended to be Section 4, Township 95, Range 22; but the cattle were not there kept. The cattle, when unloaded from the car at Thornton (not Garner), were immediately taken to *Section 4, Township 94, Range 22.* The location of the place where they were to be kept, as given by the description of the real estate, would place them outside of the state. It cannot be that one has constructive notice of a description such as we have in this case,—that the cattle might be found on any one of the sixteen Section 4's in Cerro Gordo County. In *Adams v. Commercial Nat. Bank,* 53 Iowa 491, where the mortgage was upon crops growing upon Section 17, Township 37, Range 90, whereas the description should have been Section 17, Township 90, Range 37, and the mortgage contained the further provision, '' 'in case

of my attempting to * * * remove from the county of Buena Vista the aforesaid goods and chattels, the * * * mortgagee * * * may seize * * * and sell the same, * * *' '' and wherein the mortgagor described himself as being of the county of Buena Vista, it was held that the description was not such as to put the bank on inquiry, to ascertain as best it could whether there had been a mistake in drafting the mortgage. The court said:

"The bank had knowledge the property mortgaged was on the real estate described. It also knew there were sixteen sections in the county, which would equally well answer the description of the section, and it also knew there was no such township and range in said county. * * * Upon what principle was the bank bound to know or suppose the township and range had been transposed? Besides this, certain descriptions or calls in the mortgage must be rejected, and others substituted. Why reject one of these calls more than another? Why should the bank conclude the property mortgaged was situate in Buena Vista County? Only because the mortgage made certain provisions in relation to its removal therefrom, and the mortgagor described himself as being of that county. These things should not be allowed to prevail over the positive description and location of the property. The bank could not reject any one description with more propriety than another, except that such as were definite and certain should be allowed to govern its action as to making inquiry outside of the mortgage."

In *Farmers' & Merch. Bank v. Stockdale,* 121 Iowa 748, we said:

"The third mortgage, it may be conceded for the purposes of this case, contains a sufficient description of the property in the section and township named [the section named being 29, Twp. 91, R. 20]. But the property here in question, in point of fact, was in Section 20, and if it is to be said that the record of the mortgage imparted notice that such was included in the conveyance, it must be because the provision 'and in other places in said county' affords a sufficient description as to the location thereof. We have held repeatedly that the description of property in a chattel mortgage, to be sufficient as against third persons having constructive notice only, must be such as that the property can be identified by reference to the instrument itself, aided by such inquiries as may be indicated or directed thereby,"

—citing *Smith & Co. v. McLean,* 24 Iowa 322; *Andregg v. Brunskill,* 87 Iowa 351; *Taylor v. Gilbert,* 92 Iowa 587.

Continuing, the court said:

"The corollary follows that the description in a mortgage which does not thus afford means of identification must be held to be insufficient. There should be a designation of the property conveyed and of the place where it may be found,—not that it is necessary in all cases to describe each article in detail, but a description should be sufficiently specific to enable a third person to go to the *place indicated* and set the property apart,"—citing *State Bank v. Felt,* 99 Iowa 532; *Haller v. Parrott,* 82 Iowa 42.

Continuing, the court further said:

"It must be manifest that a description reading 'twenty-five acres of corn, hereafter to be grown in Franklin County,' would not, taken alone, be sufficient to lead to an identification of such property. It is not a sufficient location of property to say that it is in a county named,"—citing *Muir v. Blake,* 57 Iowa 662; *Warner v. Wilson,* 73 Iowa 719.

In *Muir v. Blake,* supra, the description of the mortgaged crop was, "All the crops raised by me in any part of Jones County for the term of three years." And the court said:

"The mortgage itself does not suggest where the property may be found in Jones County. * * * A chattel mortgage ought not to be a dragnet, covering a whole county in any such general terms."

The court held that the description was too indefinite and uncertain.

As to charging a third person with notice of the mortgage, this court, in *Westinghouse Co. v. McGrath,* 131 Iowa 226, held that the mere location of the property within the county, and the mortgagor within the county, was not sufficient to give constructive notice. In *Casady & Co. v. German Sav. Bank,* 159 Iowa 149, we held that, in order to constitute constructive notice, the description must be sufficient so that one reading the mortgage could proceed to the place and identify the property. See, also, *First Nat. Bank v. Maxwell,* 198 Iowa 813; *Packers Nat. Bank v. Chicago, M. & St. P. R. Co.,* 122 Iowa 503; *Ivins v. Hines,* 45 Iowa 73. Many other cases as to similar descriptions held to be insufficient to constitute constructive notice could be cited. The description in plaintiff's mortgage was misleading,

and constituted a misdescription. A third person is not chargeable with notice of mistakes and misdescription in a recorded instrument such as occurs in the instant case.

It thus becomes manifest that Josten and Ulrich were. not chargeable with constructive notice of plaintiff's mortgage, and as between them and Slimmer & Thomas, they must prevail. While the description in the Slimmer & Thomas mortgage was insufficient to constitute constructive notice to third persons, it was sufficient as between the parties to said mortgage. *Hamm Brew. Co. v. Flagstad,* 182 Iowa 826, and cases therein cited.

We hold that the lower court was in error; that the note of the interveners, Josten and Ulrich, should be paid out of the fund in the hands of the Cerro Gordo State Bank; and that the excess, if any, should then be applied upon the plaintiffs' mortgage. This holding results in a reversal of the case.—*Reversed.*

STEVENS, C. J., and DE GRAFF, ALBERT, and MORLING, JJ., concur.