GROWERS CATTLE CREDIT CORP., plaintiff-appellee, v. JAMES E. ROHR, ANNA ROHR, ERNEST STOWELL, d/b/a MADISON COUNTY AUCTION, et al., defendants-appellees, and MARLIN COLE, appellant.

No. 50667.

(Reported in 117 N.W.2d 415)

October 16, 1962.

Rehearing Denied December 11, 1962.

Herrick, Langdon, Sandblom & Belin, of Des Moines, and M. C. Herrick, of Indianola, for appellant.

Watson, Elgin & Hoyman, of Indianola, for plaintiff-appellee.

Hall & Ewalt, of Indianola, and Gibson, Stewart & Garrett, of Des Moines, for defendants-appellees.

MOORE, J.—James E. Rohr for several years prior to 1958 engaged in farming a 520-acre farm owned by Arthur K. Jones near Norwalk, Warren County, Iowa. Early in 1958 Robert K. Stout contracted to purchase the farm from Jones. Stout entered into a written lease with Rohr for one year starting May 15, 1958, and assigned his interest in the lease to Jones as security. In June 1958 Stout commenced negotiations with defendant Marlin Cole which culminated on September 22, 1958, in a written agreement of purchase of Stout's interest in the farm by Cole. What, if anything, was done regarding the assignment of the 1958 lease to Jones does not appear.

In July 1958 Cole personally guaranteed a $12,000 note for money borrowed by Rohr at the Valley National Bank of Des Moines. Rohr used the money to pay an obligation owed to his prior landlord. On July 27, 1960, Cole was compelled to pay the note with interest of $1391. He claims these amounts as part of his counterclaim against plaintiff, Growers Cattle Credit Corp.

Rohr's relationship with plaintiff started in October 1958 through plaintiff's contact man, Harry or H. F. Lindberg. Thereafter he visited the farm every month or six weeks as agent of plaintiff-corporation. On October 2, 1958, Rohr and his wife went to the state of Nebraska and signed a loan application before Lindberg. On the application Rohr listed Cole as his landlord. Rohr was called as plaintiff's witness and testified the only time his wife, Anna, was in Nebraska was on this occasion. He testified without dispute that all other documents were signed in Iowa. Plaintiff did not call Lindberg as a witness.

On October 29, 1958, Rohr and his wife signed the first of a series of four notes and chattel mortgages payable to plaintiff. In the first mortgage plaintiff, apparently referring to cattle already on the farm, listed 19 head Holstein cows. Rohr testified he had no Holstein cows on the farm at that time and so informed Lindberg. As funds were furnished for additional feeder cattle the other notes and mortgages were taken by plaintiff as additional security. The last note and mortgage were dated November 5, 1959. Each mortgage was filed with the Warren County recorder within a few days after date of execution.

The notary certificate of each mortgage states James E.

Rohr and Anna Rohr appeared before H. F. Lindberg, a notary public in and for Douglas County, Nebraska, and acknowledged the execution of the instrument as their free act and deed.

Plaintiff carried all these transactions on its books as one account. No note was shown paid nor was any mortgage released of record. Plaintiff's claim is for the balance owing on the entire transaction with Rohr.

Plaintiff's vice president, Connell I. Saltzman, testified it advanced $68,750 to Rohr for the purchase of 358 head of cattle and when all these cattle were sold, plaintiff had received a total of $79,137.31. He stated $77,000 was applied on principal and the rest on interest. Plaintiff's ledger sheet, Exhibit 1, shows a $6,925.84 balance owing at time of trial. The ledger sheet and several exhibits indicate plaintiff also advanced money to Rohr on occasions as operating expense. Rohr testified plaintiff-corporation furnished funds for the purchase of 358 head of cattle, he sold 357 head (one died), he remitted all the proceeds to plaintiff, and the money paid to Cole was not from the sale of cattle purchased with money loaned by plaintiff. His testimony is undisputed.

For the year 1959 Cole and Rohr continued under the terms of the 1958 lease. The evidence is indefinite and uncertain as to crop acreage each year. During both years Cole received an undetermined part of his share of the corn raised and permitted the rest to be fed by Rohr. Rohr did not pay the cash rent for pasture for either year.

Rohr's efforts to operate the farm at a profit proved unsuccessful. His testimony is:

"Q. Prior to March 15, 1960, did Mr. Cole request that you sell the balance of your cattle? A. No, I decided I couldn't farm no longer. I couldn't pay out, and I just was going to sell out and divide what I had and quit.

"Q. Did you have any conversation with Mr. Cole prior to March 15 regarding the sale of the balance of your livestock? A. I just told him I was going to sell them and give him his part, the part that I had and the increase from them when I first started farming his farm, and then send Growers Cattle the money for theirs and that is what I did."

On March 15, 1960, Rohr sold his cattle at the Madison County Auction, owned and operated by defendant Ernest Stowell. Forty head were sold for $5560.59 and the proceeds sent to plaintiff. Fifty-eight head, which Rohr considered as Cole's part, were sold for $7673.83. That check was cashed the next day at a Winterset bank by Rohr and the cash handed to Cole who was then present.

The evidence gives no indication of the arrangement between Rohr and Stowell for the sale of the cattle except above the endorsement of Rohr on the back of the $7673.83 check is the printed notation:

"This check is issued to the payee in payment of personal property delivered to the Madison County Auction of Winterset, Iowa, and sold by the undersigned payee (said Madison County Auction acting as agent only), and by endorsing this check the payee represents and warrants to the purchaser of said property that he is the owner thereof, and that said property is free and clear of all liens whatsoever."

No claim is made that Stowell had actual notice of any interest of plaintiff in the cattle. Plaintiff's only claim that Cole had actual notice is this testimony of Cole:

"Q. Mr. Cole, these cattle you testified were fed your corn, did Mr. Rohr ever have any discussion with you about purchasing cattle from Growers Cattle Credit Corp.? A. I know there was a money loaning agency, but I did not know the amount."

We do not agree with the trial court's finding Cole had actual notice of plaintiff's claim against the 58 head of cattle sold by Rohr.

The trial court rendered judgment for plaintiff against Cole and Stowell for $6185.68, the amount of the check less a credit for some of Rohr's farm machinery sold by plaintiff. The court imposed a trust on the money in the hands of Cole and provided he was primarily liable for the amount of the judgment and costs and held Stowell secondarily liable.

I. Defendant relies on six propositions for reversal. One is that a chattel mortgage acknowledged in Iowa by someone having no statutory authority to acknowledge instruments is void and

the recording thereof gives no constructive notice to third persons.

Section 556.3, Iowa Code, provides:

"Sales or mortgages—recording. No sale or mortgage of personal property where the vendor or mortgagor retains actual possession thereof, is valid against existing creditors or subsequent purchasers without notice, unless a written instrument conveying the same is executed, acknowledged like conveyances of real estate, and such instrument or a true copy thereof is duly recorded by, or filed and deposited with, the recorder of the county where the mortgagor or vendor resides if he be a resident of this state at the time of the execution of the instrument; but if he be not such a resident then of the county where the property is situated at that time."

Code section 558.20 provides:

"Acknowledgments within state. The acknowledgment of any deed, conveyance, or other instrument in writing by which real estate in this state is conveyed or encumbered, if made within this state, must be before some court having a seal, or some judge or clerk thereof, or some county auditor, or justice of the peace within the county, or notary public within the county of his appointment or in any county in which he has filed with the clerk of the district court a certified copy of his certificate of appointment. Each of the officers above named is authorized to take and certify acknowledgments of all written instruments, authorized or required by law to be acknowledged."

The law is well established a defect in the acknowledgment of an instrument, rendering its recordation illegal although not apparent on the face of the instrument and certificate, is not changed by recordation. The instrument is not one which the statute authorizes to be recorded and recordation imparts no notice of its existence or contents to anyone. Lee County Savings Bank v. Snodgrass Bros., 182 Iowa 1387, 166 N.W. 680; Reeves & Co. v. Columbia Savings Bank, 166 Iowa 411, 147 N.W. 879; Farmers & Merchants Bank v. Stockdale, 121 Iowa 748, 96 N.W. 732; Greenwood v. Jenswold, 69 Iowa 53, 28 N.W. 433; Willard v. Cramer, 36 Iowa 22; Annotation, 59 A. L. R.2d 1299.

In Chariton & Lucas County Natl. Bk. v. Taylor, 210 Iowa 1153, 1158, 232 N.W. 487, 489, we said:

"The fact that this chattel mortgage of the plaintiff's in this case was acknowledged before a notary who had no authority to take such acknowledgment, and later recorded, did not give constructive notice to any person. The recording, therefore, of this improperly acknowledged instrument leaves it in the same shape as though it had not been recorded; and if the defendants herein are 'subsequent purchasers' without notice, under the aforesaid section of the statute, plaintiff's chattel mortgage would not be effective against them."

■ Plaintiff's agent Lindberg had no authority to take acknowledgments in Iowa. We hold the recordation of plaintiff's four chattel mortgages did not give constructive notice to any person.

II. Another proposition relied on is that no constructive notice could result from any recordation of the mortgages, because of the indefinite, uncertain and mistaken description of Rohr's cattle already on the farm.

■ Iowa law is well settled as to what constitutes a sufficient description of personal property in a chattel mortgage for the record to impart constructive notice. It must be of such a character as to enable third persons, aided by inquiries which the instrument suggests, to identify the property. Slimmer & Thomas v. Lawler, 205 Iowa 813, 218 N.W. 516; First Natl. Bk. of Hudson, S. D., v. Maxwell, 198 Iowa 813, 200 N.W. 401; and citations.

■ Describing Rohr's cattle already on the farm as 19 Holstein cows, when he had no Holsteins, would impart no notice to third persons of the claimed mortgaged cattle, assuming the mortgages were properly recorded.

III. Another proposition relied on is that the lien of a chattel mortgage does not extend to cover the proceeds of the sale of mortgaged property by the mortgagor and the trial court erred in imposing a trust on the money received by Cole.

■ Under the repeated holding of this court the lien of a chattel mortgage does not extend to or cover the proceeds of the sale of mortgaged property. First Natl. Bk. of Grand Meadow

v. Security Trust & Savings Bank, 191 Iowa 842, 181 N.W. 402; Casady & Co. v. German Savings Bank, 159 Iowa 149, 140 N.W. 401, and citations.

Plaintiff concedes this is the rule but relies entirely on Jones v. Home Savings Bank, 200 Iowa 1186, 206 N.W. 107, to sustain the trial court in impressing a trust on the funds received by Cole.

In the Jones case the mortgagor shipped mortgaged cattle to a commission house in Chicago. The bank instructed the firm to send the proceeds of the shipment to it. This was done. The mortgagee thereafter called at the bank and instructed the banker to make out a check to the mortgagee. The banker made out three checks, one payable to a partnership of which he was a member and the other two to the bank. The mortgagor was a man of limited education and signed the checks without reading them. The facts clearly established misrepresentation and fraud on the part of the banker in obtaining the proceeds of the sale. In the Jones case the court properly impressed a trust of the money received by the bank.

No fraud or misrepresentation on the part of Cole is shown. Plaintiff makes no such claim. The trial court stated no fraud was found. This case factually is not within the holding of the Jones case. The court erred in imposing a trust on the money received from Rohr by Cole.

We have considered the other propositions asserted by appellant but find it unnecessary to decide them.

IV. The unsatisfactory state of the record as to Cole's counterclaim against plaintiff led the trial court to conclude Cole failed to carry his burden of proof. We agree.

The claim of Norwalk-Cumming State Bank to priority of funds from certain farm machinery mortgaged to it by Rohr was not seriously contested in the trial court nor here. The trial court's order on the bank's claim must remain unchanged.

We hold plaintiff was not entitled to recover against Cole nor to have imposed a trust on the funds received from Rohr. As stated, Stowell was held only secondarily liable. The judgment against him cannot be permitted. Plaintiff's motion to

affirm judgment against Stowell is overruled.—Reversed and remanded.

All JUSTICES concur.