CENTRAL TRUST COMPANY of Illinois, Appellant, v. J. W. STEPANEK, Defendant, and MERCHANTS NATIONAL BANK of Omaha, Intervenor, Appellee.

**Chattel mortgages:** ASSIGNMENT: FAILURE TO RECORD: PRIORITY OF LIENS. The unrecorded assignment of a chattel as well as of a real estate mortgage will not be given precedence over the lien of a subsequent mortgagee without notice; so that where the assignee failed to record his assignment but left it in the power of the mortgagee to release the same of record, who did so, taking another mortgage upon the same property to secure the same debt, and transferred the same to another and innocent purchaser, the holder of the second mortgage acquired the prior lien.

**Same.** The assignee of a chattel mortgage is a purchaser within the contemplation of the recording act relating to the sale or mortgage of personal property where the vendor or mortgagor retains the possession.

*Appeal from Crawford District Court.*—HON. Z. A. CHURCH, Judge.

WEDNESDAY, APRIL 8, 1908.

THE opinion states the case.— *Affirmed.*

*H. B. Hurd, Shaw, Sims & Keuhnle,* and *Hager & Powell,* for appellant.

*Conner & Lally,* for appellee.

WEAVER, J.— On January 8, 1904, J. W. Stepanek executed and delivered to H. S. Green a chattel mortgage on one hundred head of three-year old steers to secure the payment of his promissory note for $4,000, due April 8, 1904. Soon after the first-named date Green transferred the note to the Central Trust Company of Illinois as collateral security for the payment of his own debt to said company. The mortgage was duly recorded, but no record of its assignment to the appellant was ever made. After said assignment had been made to the appellant, Green pretending still to be the owner of the note and mortgage, Stepanek paid him thereon the sum of $200, and made and delivered to him another promissory note for $3,800 in renewal of the note first mentioned, and secured the same by another mortgage upon the same property. Green then went to the office of the recorder of the county and canceled upon the record the first mortgage, and thereafter, and before the last-mentioned note became due, transferred it to the Merchants' National Bank of Omaha, which claims to have received it in due course and for a valuable consideration. On April 9, 1904, plaintiff began this action in equity, averring the making of the note and mortgage by Stepanek to Green and the assignment of the said security by Green to itself, and further alleging that Stepanek had wrongfully sold two car loads of the mort-

gaged steers and received therefor $2,000 in cash, which money he refused to turn over to plaintiff; that Stepanek was insolvent; and that the Des Moines National Bank was asserting some claim to the cattle or to some lien thereon, and prayed for an appointment of a receiver for the mortgaged property and for the money received by Stepanek as aforesaid and for a foreclosure of said mortgage.   A receiver was in fact appointed, and much of the record pertains to the orders made by the trial court with reference to said receiver and his subsequent discharge on motion of the defendants; but as we think that phase of the case is not of controlling importance we shall not here enter into the details.   On October 21, 1904, the Merchants' National Bank of Omaha intervened, setting up its claim under the mortgage last executed.   The trial court found for the intervener, and established its mortgage as a first lien on the property, and the plaintiff appeals.

I.   The principal question urged upon our attention has reference to the effect, if any, upon the rights of the parties of plaintiff's failure to record the assignment of the

1. CHATTEL MORTGAGES: assignment: failure to record: priority of liens.

mortgage under which it claims a first lien on the cattle in controversy.   It will be noted from the foregoing statement that the mortgage first in time was duly recorded and afterwards assigned to plaintiff.   Later, the assignment not being recorded, Green, the mortgagee named in the instrument, and the only person whom the record indicated as having the right so to do, canceled it, and, taking another mortgage for the same debt on the same property, assigned it to the intervener, who took it without notice of the earlier lien.   Appellant argues there is no statute requiring the recording of such assignments, and that failure to make such record will not affect the rights of the assignee or priority of his lien, even where the original mortgagee, taking advantage of such failure, cancels the lien of record, and obtains another mortgage for the same debt, and puts the security

thus fraudulently obtained in circulation. Much support for this position may be found in the cases, but the question is no longer an open one in this State. It is true we have no statute which in express terms requires the recording of assignments of mortgages either of real or personal property, but it has very frequently been held that as to the former an unrecorded assignment will be avoided in favor of subsequent purchasers and existing creditors without notice. *McClure v. Burris,* 16 Iowa, 591; *Bank v. Anderson,* 14 Iowa, 544; *Quincy v. Ginsbach,* 92 Iowa, 144; *Jenks v. Shaw,* 99 Iowa, 604; *Parmenter v. Oakley,* 69 Iowa, 388; *Bowling v. Cook,* 39 Iowa, 200; *Daws v. Craig,* 62 Iowa, 515. Since the trial of the present case in the court below we have also held the same rule applicable to mortgages of personal property (*Farmer v. Bank,* 130 Iowa, 474); the theory being that the spirit of the statute, if not the strict letter, requires the record of all such instruments in order to bind existing creditors, subsequent purchasers and lienholders. While the first of the cases above cited (*Blank v. Anderson*) was by a divided court, the rule there announced has since been steadily and repeatedly adhered to without dissent. The reasons advanced in support of our rule are no more persuasive where the mortgage is of real estate than where it refers to personality. In the *Anderson* case, *supra,* the majority, speaking by Wright, J., says:

But, on the other hand, how easy it is for the assignee of the notes or debts to protect himself. He can, by having the mortgage assigned on the margin of the record, protect himself against all possible fraud on part of the mortgagee, and leave the evidence of his rights in such a condition as that it must inevitably be seen by any one looking for incumbrances. Or, if not thus, he may take his assignment in the ordinary form and have it duly acknowledged and recorded, and thus give notice of his interest in the security to third persons. . . . Some of the States, for instance, after providing a general law upon the subjects of mortgages and conveyances, expressly require assignments of mortgages

to be recorded.    Our law, by using general terms, well defined and understood, obviates the necessity of more specific legislation.    And in view of this legislation, why should the assignee of a mortgagee be exempt from the duty of placing upon record that which evidences his title to the right or interest thus purchased?    He need not do it for the perfection of his right as against the assignor or vendor, but for his own protection against third persons the necessity arises.    .   .   . A secret or clandestine assignment, whether by parol or upon the instrument itself, or by the transfer of a debt, however honest of purpose, is liable as against third persons to untold abuse.    They ought, therefore, to be made a matter of record.    The spirit, if not the very letter, of our recording law, requires it.    Such a requirement can work no possible hardship, while the contrary can only be attended with evil, and that continually.

In the *McClure* case, *supra,* the court applies the well-settled rule " that when one of two innocent parties must suffer by the wrongful act of a third person, he must suffer who placed or left it in the power of such third person to do the wrong."    In *Daws v. Craig, supra,* we said:    " The negligence and failure of the plaintiff to have the assignment of the mortgage recorded has been the primary cause of this controversy, and we think the burden to have the defendant's mortgage set aside should have been assumed by her."    It would be difficult to formulate any plausible ground for saying that these reasons, the soundness of which we have so often approved as applied to assignments of mortgages upon real estate, are not equally persuasive as applied to mortgages upon personal property.    The statute provides that no unrecorded sale or mortgage of personal property where the possession is retained by the vendor or mortgagor is valid against existing creditors or subsequent purchasers.    Code, Section 2906.

It is a well-settled proposition that a subsequent mortgagee is a purchaser within the meaning of this statute. *Manny v. Woods,* 33 Iowa, 265 ; *Bank v. Creamery Packing Co.,* 105 Iowa, 136 ; *Raymond v. Whitehouse,* 119 Iowa,

132; *In re Gill's Estate,* 79 Iowa, 296. If a mortgagee be
a purchaser within the meaning of the stat-
ute, there is no reason for denying that
character to the assignee of the mortgage. *Larned v. Dono-
van,* 84 Hun, 533 (32 N. Y. Supp. 731); *Burns v. Berry,*
42 Mich. 176 (3 N. W. 924). The doctrine of our late
case (*Farmer v. Bank*) above cited, finds direct support
also in *Page v. Benson,* 22 Ill. 484. In that case a chattel
mortgage securing the payment of a certain judgment was
assigned to the plaintiff, who did not place the assignment
of record. Taking advantage of this omission, the mort-
gagee satisfied the judgment and the mortgage, and executed
another mortgage on the same property. The property hav-
ing been seized under the second mortgage, the assignee of the
first mortgage sought to have the satisfaction of the judgment
set aside and the priority of his mortgage established. In
affirming a decree denying the relief asked the court says:
" A secret assignment of the judgment cannot be allowed
to entrap innocent parties. All who are not chargeable
with notice of the assignment of the judgment were justified
in assuming that the judgment creditors were still the
equitable owners of the judgment and first mortgage, and,
when they entered the satisfaction of the judgment or caused
the execution to be returned satisfied, everybody ignorant
of the assignment had a right to buy the property, or treat
the property as released from the first mortgage, which was
given to secure that judgment. Otherwise the grossest
frauds might be practiced upon the innocent not chargeable
with laches."

The appellant's contention is based solely upon prece-
dents which have not had the approval of this court, and
are not, we think, in harmony with the trend of the later
authorities. We are satisfied that the rule we have here-
tofore adopted is supported by the better reason and the
greater equity, and we are content to reaffirm the position
taken in the *Farmer* case. The controversy is one of those

*2. SAME.*

in which unfortunately one of two innocent parties must suffer a substantial loss, and, as we have already seen, the law leaves the burden upon the one whose omission made the perpetration of the fraud possible. The finding of the trial court that the mortgage owned by the appellee is entitled to preference must therefore be upheld. Appellant devotes some effort to the argument that the note held by the appellee bank to secure the mortgage last given is not negotiable in form. If we were to concede the soundness of the position stated, we are still unable to see how the fact, if established, would affect the result under the issues tried. If the appellee, instead of advancing the money and taking the note and mortgage, had purchased the steers outright, without notice of conflicting claims, and no paper, negotiable or otherwise, had been executed or delivered, its defense to the foreclosure of appellant's mortgage would be complete under the rules we have hereinbefore approved, and no reason is suggested why it should be held less effective because of the nonnegotiable character of the evidence of the indebtedness which it seeks to enforce.

II.   The result of the conclusion reached in the first paragraph renders unnecessary further consideration of the points made in the argument for the appellant. There has been submitted with this case a motion by the appellee to dismiss the appeal and a motion to strike the appellant's abstract and to affirm the judgment below, based on several grounds therein stated. The various assignments involve no questions which are not already well settled, and we shall not take the time to enter upon their discussion further than to say we think none of the objections are well taken, and the motions are each overruled.

We find no sufficient reason for disturbing the judgment of the district court. The costs for one-third of the printing of the record and arguments in this court will be taxed to the appellee, and all other costs to the appellant.— *Affirmed.*