(No. 21378.—

David R. Forgan *et al.* Defendants in Error, *vs.* The Gordon Motor Finance Company, Plaintiff in Error.

*Opinion filed October 22, 1932—Rehearing denied Dec. 13, 1932*

446

SHORT, ROTHBART, WILLNER & LEWIS, and SIMS, STRANSKY, BREWER & POUST, (FRANKLIN J. STRANSKY, and SEYMOUR LEWIS, of counsel,) for plaintiff in error.

GOLDMAN, ALLSHOUSE & HEALY, (ROBERT G. DREFFEIN, and JOHN M. NIEHAUS, of counsel,) for defendants in error.

Mr. JUSTICE ORR delivered the opinion of the court:

An action in replevin and trover was instituted in the circuit court of Cook county to determine the right of possession of a certain Cord automobile. Upon a hearing without a jury the trial court found plaintiff in error, the Gordon Motor Finance Company, (herein designated as the Gordon Company,) not guilty and ordered a writ of *retorno habendo* issued in its favor. Thereafter the defendants in error, being nine trustees of the Commercial Credit Trust, (herein referred to as the Credit Trust,) perfected an appeal to the Appellate Court for the First District, and a judgment was there rendered reversing the judgment of the circuit court without remanding the cause. To review the latter judgment this court awarded a writ of *certiorari*.

The facts necessary to an understanding of the issues are as follows: During the years 1929 and 1930 the Gordon Company and the Credit Trust were both engaged in the business of financing the sales of automobiles under what is commonly known as "conditional sales contracts." The Auburn Woodlawn Motors, Inc., (herein referred to as the Woodlawn Motors,) then operated a retail automobile sales agency in Chicago, where it displayed Auburn and Cord automobiles. H. J. Munro was the president of that company and Thomas V. Allison was its secretary and treasurer. On September 6, 1929, the Gordon Company advanced the sum of $2442.68 to purchase the Cord automobile in question from the wholesale department of the Chicago Auburn Company. At this same time the Woodlawn Motors executed and delivered to the Gordon Company a

contract by which it agreed to sell and deliver the automobile to itself, "title to said car to remain in the seller or seller's assigns until the whole price, amounting to $2442.68, is fully paid." Attached to this contract was a promissory note for the same amount executed by the Woodlawn Motors, payable to the order of itself at the office of the Gordon Company, duly endorsed by the Woodlawn Motors to the order of the Gordon Company. On the back of the contract was printed an assignment executed by the Woodlawn Motors, assigning the contract on the reverse side thereof, together with the note therein mentioned and the property therein described, to the Gordon Company. Below this assignment, on the same page, was a re-purchase agreement by which the Woodlawn Motors agreed to purchase the automobile from the Gordon Company for the sum of $2442.68, in certain installments. All of these instruments were executed at the same time as part of the same transaction, and the automobile was thereupon removed from the wholesale department of the Chicago Auburn Company to the salesroom of the Woodlawn Motors. On November 20, 1929, another contract was executed by the Woodlawn Motors, by H. J. Munro, its president, agreeing to sell and deliver the same automobile to Allison, the secretary and treasurer of that company. At the time of this transaction Allison was employed at another garage in Chicago, and after a telephone conversation with Munro the contract was sent there for him to sign. By his own testimony Allison admitted that he made no payments and had never possessed the automobile in question and made no claim that he had ever purchased or owned it at any time. This contract executed by Allison was five days later assigned by the Woodlawn Motors to the Credit Trust for the sum of $2256. Prior to taking over this contract the Credit Trust made an investigation of Allison's credit and relied upon a satisfactory report on him in closing the deal. At the time the Credit Trust purchased the Allison contract

and turned over the $2256, the record shows that none of its officers or agents had seen the automobile in question nor had any knowledge that it was then in the salesroom of the Woodlawn Motors, their only understanding being that it was a demonstrator car then in the possession of Allison, which representation they relied upon without any verification. The record further shows that the Credit Trust, after taking the assignment of the Allison contract, made no effort, by notice or letter, to collect any partial payments from Allison, as provided in the contract, but did collect three payments of $50 each from the Woodlawn Motors, and apparently relied upon this company, rather than Allison, for payment. On February 5, 1930, the Gordon Company took possession of the automobile and moved it to its place of business. About thirty days later the automobile was seized by the sheriff of Cook county by virtue of a writ of replevin issued at the instance of the nine individuals who are defendants in error here and who describe themselves as trustees of Commercial Credit Trust.

The record in this case clearly shows that Allison was not a *bona fide* purchaser for value of the automobile in question. The contract executed by him to the Woodlawn Motors was without consideration, and his own testimony shows that he never took possession of the automobile, was never asked to make, and never made, any payments on it, and never claimed any right or title to it. His uncontradicted testimony is that he knew the Gordon Company had a lien on the automobile prior to the time he executed the contract that was assigned to the Credit Trust. Pleas of the general issue were filed by the Gordon Company to the declaration in this case, thus putting in issue the right to immediate possession of the automobile. By reason of this fictitious contract Allison acquired no title or legal right to the immediate possession of the automobile, and the Credit Trust, as the purchaser and assignee of the Allison contract, took no greater right in the automobile than Allison had.

(*Sherer-Gillett Co.* v. *Long,* 318 Ill. 432.)  In an action of replevin the plaintiff must recover, if at all, on the strength of his own title and right to immediate possession and not on the weakness or lack of title or right of possession of the defendant.  *Reynolds* v. *McCormick,* 62 Ill. 412; *Pease* v. *Ditto,* 189 id. 456.

It is urged, however, as an exception to the rule of law above stated, that the Gordon Company, by its conduct in allowing the Woodlawn Motors to retain possession of the automobile, is now precluded from denying the seller's authority to sell, under the doctrine that where one of two innocent persons must suffer, he should bear the burden whose conduct has induced the loss.  But that rule does not apply in this case.  The Credit Trust did not purchase the automobile in question.  All it purchased was the conditional sales contract executed by the Woodlawn Motors and Allison.  Before purchasing this contract the Credit Trust officers and agents had never seen the automobile therein described.  The right of an innocent purchaser who buys an article on display in the ordinary course of business is not in issue, as the *res* purchased was not the automobile but a conditional sales contract.  It was the financial condition of the purchaser, Allison, which was the subject of investigation by the Credit Trust prior to its purchase rather than the automobile itself.  The record shows that no representative of the Credit Trust saw the automobile in the salesroom or gave any concern as to its whereabouts at the time the Allison contract was purchased.  On the other hand, the record shows that the Gordon Company kept an almost daily check-up on the whereabouts of the automobile.  The Gordon Company furnished the money with which the Woodlawn Motors purchased the automobile and its contract was in every respect a *bona fide* transaction, followed by adequate measures to protect its investment.  In contrast with this, the Credit Trust was negligent in relying upon a mere statement that the automobile was a demonstrator in

Allison's possession without confirming this fact by investigation; and the inconsistency of its position is further shown by its relying entirely upon the credit rating of Allison in purchasing the contract and then making all of its collections under the contract from the Woodlawn Motors without demanding payment from Allison or otherwise considering him a party to the transaction. Under these circumstances there is no basis to sustain the judgment of the Appellate Court in awarding possession of the automobile to the Credit Trust.

The Appellate Court reversed the judgment of the circuit court in this case with the mere statement, "the court, upon the allegations and proofs in this cause contained, doth find the right to the possession of the property in question is in the appellants." If the reversal by the Appellate Court was for error of law the errors were such as might have been corrected upon remanding the cause, but there was no sustainable reason, in law, for the reversal, and the judgment was reversed without any finding of fact. All legitimate evidence offered was admitted by the trial court, resulting in a finding of the facts in controversy in favor of the plaintiff, and the Appellate Court did not find any of such facts different in any respect. No error of law was committed on the trial, and the Appellate Court erred in reversing the judgment, as its finding was merely a statement of its ultimate conclusion as to the legal rights of the parties. *Schaefer* v. *Safety Deposit Co.* 281 Ill. 43.

In our judgment the circuit court was correct in awarding the immediate right of possession of the automobile in question to the Gordon Company, and the Appellate Court erred in reversing that judgment. The judgment of the Appellate Court is therefore reversed and the judgment of the circuit court is affirmed.

*Appellate Court reversed, circuit court affirmed.*