GENERAL MOTORS ACCEPTANCE CORPORATION, Appellant, v. MARSHALL WHITELEY, Appellee.

No. 41833.

FEBRUARY 6, 1934.

Bracewell & Poston, and Hughes, O'Brien & Faville, for appellant.

T. W. Miles, for appellee.

EVANS, J.—Stansberry was an automobile dealer in the town of Seymour. He handled the Chevrolet line. The defendant Whiteley was likewise an automobile dealer in the town of Corydon and handled the Chevrolet line in that town. Stansberry was embarrassed financially and was aided financially by the plaintiff in carrying his stock of automobiles. He had upon his floor five new Chevrolet cars, which he had carried since the early summer of 1931. He was confronted with the possible necessity of carrying his stock over into the ensuing season. On Monday, October 26, 1931, he sold them to the defendant for an agreed price of $2,450. Four of them were worth approximately $550 each and the other one a little more. In settling with Stansberry, the defendant deducted from the purchase price an account owing by Stansberry to the defendant and his brother, and issued and delivered his check for the balance of $2,138. He thereupon received the property. The defendant's check was drawn upon a bank at Corydon. Stansberry deposited the check the same evening in the National Bank of Seymour. In the ordinary course of mail the check would reach the drawee-bank on Thursday. Immediately upon deposit of the check, Stansberry drew his own check upon the National Bank of Seymour to the plaintiff for $2,080, and mailed the same to the plaintiff. This was the amount owing to plaintiff by Stansberry under his conditional sales contract. Without the consent of or consultation with Stansberry, the National Bank of Seymour immediately charged against Stansberry's account certain indebtedness owing by Stansberry to the bank and extinguished thereby the credit of Stansberry accordingly. The effect of this action on the part of the Seymour bank was to divert wholly the proceeds of the sale received from the defendant and to render worthless the check mailed by Stansberry to the plaintiff.

The foregoing may conveniently be deemed as the first chapter of the record. At this point the so-called "trust receipt" under which plaintiff claimed title to the property as a bailor came before the court for interpretation. The instrument comprised a purported trust receipt and a promissory note for the purchase price signed by Stansberry, both being parts of the same transaction. The court ruled that the instrument as a whole comprising both "receipt" and "note" constituted a conditional sales contract and not a bailment. If the court had interpreted this instrument to constitute a bailment, it would have entitled the plaintiff to recover

regardless of notice to the purchaser. On the other hand, the holding of the court entitled the defendant to sustain his alleged purchase of the property upon a showing that he purchased from Stansberry in good faith and without notice and for value. For convenience of presentation, we treat that feature of the record as a second chapter. The plaintiff complains of this ruling of the court just noted, and we will consider it here before entering upon the other phases of the case. Did the court err in holding as a matter of law that Stansberry was not a bailee? It is the contention of the appellant-plaintiff that the identical form of this trust receipt has been considered by other appellate courts wherein it has been held that it constituted a bailment. The question, of course, involves an interpretation of our own statute, section 10016. This section has been considered in many of our cases, and its interpretation is quite settled. It is perhaps sufficient to cite a comparatively recent case. Maxwell Motor Sales Corporation v. Bankers Mortgage & Securities Company, 195 Iowa 384, 192 N. W. 19. In that case we quoted from an earlier case (Bentley & Olmstead v. Snyder & Son, 101 Iowa 1, 69 N. W. 1023), as follows:

"The most infallible test by which to determine under which class the contract falls is to ascertain whether there is a promise by the purchaser to pay for the goods delivered. If there is such promise, then, no matter under what form the transaction is disguised, it is held to be a conditional sale, and not a bailment."

Again we quote from Norwegian Plow Co. v. Clark, 102 Iowa 31, 70 N. W. 808, as follows:

"One of the principal tests by which to determine this question is, was there a binding promise on the part of the consignee to pay for the goods? If there was such promise, the contract is ordinarily held to be one of sale, and not of bailment."

In the Maxwell case the trust instrument comprised not only the receipt but a promissory note, as here. We held the transaction to constitute a conditional sale and not a bailment. We do not find anything to the contrary in the Nebraska case cited by appellant. General Motors Acceptance Corporation v. Hupfer, 113 Neb. 228, 202 N. W. 627. In that case only the so-called trust receipt was under consideration of the court. No promissory note attended the

receipt in that case. We think the district court ruled at this point consistently with our previous holdings.

II. We proceed to the second feature of the record. When the Seymour bank, by sheer force of its position, appropriated to its own use the proceeds of the defendant's purchase, it brought an outside confusion into the case. On Tuesday, October 27, two salesmen of the plaintiff (one of whom lived in Corydon) discovered what had happened and proceeded to the protection of their employer as best they could. For the purpose of repelling the intrusion of the Seymour bank, they besought the defendant to stop the payment of his check by notice to the drawee-bank at Corydon. It was known that by ordinary course of mail the check could not reach the drawee-bank until Thursday. It appears that in making the deposit of the check in the Seymour bank, the deposit slip used by Stansberry contained certain printed matter to the effect that the check was accepted only for collection and that the bank acted only as the agent of the depositor. Because of the printed words appearing upon this deposit slip, the plaintiff took the position, through its representatives, that payment for the property was incomplete. The defendant had some conferences with the salesmen. He hesitated and finally declined to stop payment of the check. This refusal on his part was featured on the trial as an offer of evidence tending to show bad faith on the part of the defendant and perhaps collusion with the bank. Two of the errors assigned by the appellant are predicated upon this part of the record. The plaintiff requested an instruction to the effect that if the defendant had notice of the right of the plaintiff before his check had been paid by the drawee thereof, and if he had an opportunity to stop payment on the check after having such notice, that his refusal to stop payment in such event "gave him no right in and to the cars superior to the appellant." The court instructed the jury that under the undisputed evidence the defendant had paid for the cars. Complaint is made by the plaintiff at this point on the ground already indicated that the check was in the hands of the Seymour bank for collection only and that payment had not been completed until collection was actually made. We may consider these alleged errors together. The printed matter upon the deposit slip did not have the controlling effect contended for by appellant. The appellant called Stansberry as a witness and interrogated him on the subject of the deposit. He testified that the deposit was intended as a regular deposit.

Nothing was said to the contrary, and he believed himself to be making a general deposit. He checked at once upon his account. His testimony is undisputed in this regard. That the printed matter upon the deposit slip did not have the effect contended for is definitely held in Andrew v. Security Trust & Savings Bank, 214 Iowa 1199, 243 N. W. 542. In that case we said:

"In determining whether a deposit is general or for collection, the court will look to the real intention and purpose of the parties as revealed by the agreement and the circumstances, by what they did and said at the time, and by their course of business."

The check of appellee was negotiable and was negotiated. To stop payment of the check was to proceed at his own peril. He would thereby challenge not only the title of the Seymour bank, but the title of Stansberry also. He would necessarily assume the risk of another lawsuit. Upon this record he was under no legal duty to stop the check. He had nothing to do with the action of the Seymour bank and was not responsible for it. His stoppage of the check would not necessarily terminate the rights, if any, of the Seymour bank. Such a stoppage would operate as a breach of his contract with Stansberry. It would have given to Stansberry a ground of rescission of the contract of purchase. The appellee therefore acted within his rights in refusing to complicate the situation by assuming new obligations and repudiating earlier ones. The court therefore did not err in stating to the jury that the appellee had paid for the goods. Nor did it err in refusing to instruct the jury in accord with appellant's requested instruction No. 7.

III. By instruction No. 6, the court instructed as follows:

"By the term 'notice' as used in these instructions is meant either knowledge of the fact in question or means of knowledge of such fact.

"By means of knowledge is meant information as to facts which would put a prudent man on inquiry which if prosecuted with ordinary diligence would lead to actual knowledge of the fact in question.

"In this case if the defendant at the time of the purchase of said automobiles or after purchase and before paying value therefor had knowledge of the right and title of the plaintiff thereto, or if at either such times he had information as to facts which would

put a prudent man on inquiry, which if prosecuted with reasonable diligence would have led to actual knowledge of plaintiff's right and title to said automobiles then defendant had notice within the meaning of the law. But, if he had neither such knowledge nor such means of knowledge then he did not have notice."

The appellant excepted to this instruction as inadequate and presented four requested instructions on the subject of notice in lieu of that given by the court. One of these may be set forth as illustrative of each. It is as follows:

"You are told that the defendant could not neglect to make inquiries that would have charged him with notice of plaintiff's contract or trust agreement, if from all the facts and circumstances a reasonable man would have made such inquiries, and you are instructed that if the defendant deliberately refused to make inquiry when a reasonably prudent man would have inquired under the same or similar circumstances and defendant's refusal to inquire was for the reason that defendant believed that such inquiry might disclose the existence of claims or mortgages upon the said automobiles including the claim of the plaintiffs herein, then you are told that the defendant was not an innocent purchaser of the property without notice, and it is your duty to find for the plaintiff and against the defendant."

We are impressed with the adequacy of the instruction as given by the court. We do not think that the record is such as to justify the special emphasis and elaboration insisted upon by the appellant in the instructions presented by it. It is to be borne in mind at this point that there is nothing in the inception of this case that could be deemed as a badge of fraud. Indeed, no fraud is charged in the pleadings. The transaction between the appellee and Stansberry was not presumptively hostile to the appellant. Stansberry converted the property into money for the very purpose of paying the appellant. The purport of the record is that if the Seymour bank had not interposed itself in the way, Stansberry would have paid the appellant his debt and would have done so with the proceeds, which he had received from the appellee. The break between appellant and appellee came when the appellee refused to risk the stoppage of payment of his check. The call made upon him by the appellant to do so was at his own risk. It does not appear that any indemnity

was offered to him for assuming such risk. Upon the record the question of notice involved no evidence of fraud, concealment, or collusion. The real grievance of the appellant was against the Seymour bank.

If the appellant could have brought before us in the same suit, the defendant, and Stansberry, and the Seymour bank, the right could have been sifted from the wrong and the proximate wrong could have been allocated. But it appears that the National Bank of Seymour found early retreat in a receivership. The plaintiff therefore chose to rely upon its legal title, such as it was, rather than to pursue a bedraggled equity into a bankruptcy court. The actual issue here is a very narrow one and does not lend itself to much elaboration either in instructions or in other respects. The one question here is: Did the defendant have notice of the rights of the plaintiff, when he bought? Other minor errors are assigned. There is some complaint because the court allowed the defendant the opening and closing of the argument. The burden was laid upon the defendant on the only disputed issue of fact in the case. The ruling of the court was correct. We find no error in the record.

The judgment is accordingly affirmed.

CLAUSSEN, C. J., and ALBERT, KINDIG, and DONEGAN, JJ., concur.