[No. 27867. Department One. April 2, 1941.]

GENERAL CREDIT CORPORATION, *Respondent,* v. LEE JAMES, INC., *Appellant.*[1]

[1]Reported in 111 P. (2d) 762.

186

*Maurice Kadish,* for appellant.

*Bogle, Bogle & Gates* and *Lynwood W. Fix,* for respondent.

ROBINSON, C. J.—The facts in this cause are practically undisputed, and, in substance, are as follows:

On August 20, 1935, James R. Stafford mortgaged an automobile to Western Motors Finance Company, hereinafter referred to as the finance company. The mortgage was recorded on August 24th, and on the next day sold and assigned to General Credit Corporation, hereinafter called the credit company. With the assignment, the finance company delivered to the credit company a certificate of title, issued by the state department of licenses in the name of Stafford as registered owner and the finance company as legal owner. This certificate had been issued on September 5, 1934. The fact about which the case turns is that the assignment from the finance company to the credit company was never recorded.

After the assignment of the mortgage to the credit company, the finance company repossessed the car from Stafford, and, on October 15, 1935, sold it to

John D. Moore, taking his mortgage. The Moore mortgage was duly recorded and offered for sale to Lee James, Inc., hereinafter referred to as James.

James examined the auditor's records and found the mortgage, made by Stafford to the finance company on the previous August 20th, unsatisfied, as well as a prior mortgage between the same parties. The finance company held a certificate of registration from the license department, issued in the name of Stafford as the registered owner and itself as legal owner, but, having delivered the certificate of title to the credit company, it represented to James that it had been lost and that it would execute an application for a duplicate. On November 27th, it signed such an application, accompanied by an affidavit of loss. On November 29th, the deal between the finance company and James was consummated. James received the registration certificate, the application for a new title certificate, satisfactions of the two Stafford mortgages, and an assignment of the Moore mortgage. He did not, however, file the satisfactions in the auditor's office until the following February.

On December 3, 1935, only a few days after the transaction between the finance company and James, the finance company repossessed the car from Moore and delivered it to James the next day. On December 31st, James sold it to Smith and Rulard. On January 14, 1936, James received from the license department the duplicate certificate of title previously applied for by the finance company, showing Stafford as registered owner and James as legal owner, and delivered it to its vendee. James had no knowledge of the assignment of the Stafford mortgage to the credit company until the following February. The credit company brought this action against James to recover

damages for conversion and recovered a judgment. James appealed.

We are confronted at the outset with a motion to dismiss the appeal, on the ground that there is no appellant in existence. The judgment appealed from was entered on September 30, 1939. Notice of appeal was given on October 4, 1939. It appears, however, that, on June 26, 1936, Lee James, Inc., had begun proceedings for voluntary dissolution, designating V. F. Fleischman as trustee to wind up its affairs, and that a certificate of dissolution was filed by the trustee in the office of the secretary of state on December 5, 1939. It further appears, however, that the plaintiff-respondent continued to pursue the corporation's assets by beginning supplemental proceedings against the defendant-appellant. On April 23, 1940, the plaintiff-respondent moved to make Fleischman a party to these proceedings, and prayed that, upon the hearing, the court appoint a receiver to take charge of the assets of Lee James, Inc., in the hands of Fleischman as trustee. The motion to make Fleischman a party was granted. On May 13th, however, the superior court, by an order, permitted the judgment to be superseded by filing a cash bond of $425. That sum was deposited. The plaintiff-respondent, upon the next day, dismissed the trustee from the supplemental proceedings.

It is urged that, Lee James, Inc., being no longer in existence, the process of the court cannot reach it, and, therefore, the appeal must be dismissed. The respondent, however, pursued the residual property of the corporation in the hands of its trustee after its dissolution, with the result that a portion of it was deposited in court to supersede the judgment. It is, therefore, of no real moment to the respondent whether Lee James, Inc., is in existence or not. It is fully pro-

tected by the residual property of that corporation whatever the result of the appeal. In spite of the technical difficulties presented, we are of the opinion that, under the special facts here, the appeal should not be dismissed.

As to the merits, the respondent states, in its brief, that the questions presented are as follows:

"First: Whether the assignee of a chattel mortgage on an automobile must, under the statute law of this state, file his assignment in order to protect his title as against an innocent third party who, by the fraudulent act of the assignor, paid value to said assignor for a second assignment of a purported mortgage on the same automobile?

"Second: Under the facts presented in this case can the appellant claim to be an innocent purchaser for value?"

■ Our statutes require that chattel mortgages shall be filed in the office of the county auditor in order to be valid against subsequent bona fide purchasers and encumbrancers, but merely authorize the recording of assignments of chattel mortgages. Rem. Rev. Stat., § 10616 [P. C. § 9742] (Laws of 1897, p. 23, § 1), provides:

"Any person to whom any real estate or chattel mortgage is given, or the assignee of any such mortgage, may, by an instrument in writing, by him signed and acknowledged in the manner provided by law entitling mortgages to be recorded, assign the same to the person therein named as assignee, and any person to whom any such mortgage has been so assigned, *may*, after the assignment has been recorded in the office of the auditor of the county wherein such mortgage is of record, acknowledge satisfaction of the mortgage, and discharge the same of record." (Italics ours.)

■■ In the early case of *Gottstein v. Harrington,* 25 Wash. 508, 65 Pac. 753, we held that the rights of

an assignee, who does not record his assignment of a chattel mortgage, are inferior to the rights of a bona fide purchaser of the property, who relies upon a satisfaction of the mortgage by the mortgagee of record without knowledge that the mortgage has been previously assigned to another. The case has never been overruled, but on the contrary, has been cited with approval in subsequent decisions. See, for example, *Erickson v. Kendall*, 112 Wash. 26, 191 Pac. 842.

Respondent has cited a number of decisions from other jurisdictions holding to the contrary, and many more could have been cited. We are, however, of the opinion that both the weight of outside authority and of reason supports the rule laid down in the *Gottstein* case. In the cases supporting the rule, the result is generally reached by applying the equitable principle that, where one of two persons must suffer for the wrongful act of the third, that one should suffer who left it in the power of the third person to do wrong. *Central Trust Co. v. Stepanek*, 138 Iowa 131, 115 N. W. 891, 128 Am. St. 175, 15 L. R. A. (N. S.) 1025; *Millick v. O'Malley*, 47 Idaho 106, 273 Pac. 947; *Federal Acceptance Corp. v. Dillman*, 82 Colo. 598, 262 Pac. 85. This principle, expressed in a slightly different way, has frequently been employed as a rule of decision by this court. See *Merchants Rating & Adjusting Co. v. Skaug*, 4 Wn. (2d) 46, 102 P. (2d) 227, 111 A. L. R. 1258.

■ As to the second question, it is contended by the respondent that the failure of James to get a technical certificate of title and to demand the note when he purchased the Moore mortgage, and his failure to file the satisfactions of the Stafford mortgages, show that it was not a purchaser for value. But we cannot follow this reasoning. James got the car itself within four or five days, and had no need for

the note. It is not unusual for a certificate of title to be lost or mislaid, and James did get the papers necessary to secure a duplicate. Furthermore, to our minds, his delay in recording the satisfactions raises no inference of knowledge that an assignment was outstanding.

The judgment appealed from is reversed and the cause dismissed.

BEALS, MILLARD, BLAKE, and SIMPSON, JJ., concur.

[1]Reported in 111 P. (2d) 771.