STATE SAVINGS BANK OF SHARPSBURG, Appellee, v. UNIVERSAL CREDIT COMPANY, Appellant.

No. 46139.

APRIL 6, 1943.

C. Glenn Garten and James M. Stewart, both of Des Moines, for appellant.

O. J. Kirketeg and Flick & Lucas, all of Bedford, for appellee.

OLIVER, J.—Ed Bray, doing business as Bray Motor Company, was a retail Ford automobile dealer, at Bedford, Iowa. He banked with a branch of appellee bank at Gravity, Iowa, six miles distant from Bedford. He had what is designated as a floor-plan arrangement with appellant, Universal Credit Company (Des Moines office), whereby he secured cars from Ford Motor Company on conditional-sale contracts, which contracts Ford Motor Company sold and assigned to appellant.

The automobile in controversy was one of a rail shipment of four automobiles from Ford to Bray Motor Company, at Bedford, in October 1940. The invoice listed each automobile by description, factory number, and price. On the back thereof was a conditional-sale contract to Ford Motor Company of "the property described on the reverse side hereof." The bill of lading and invoice were sent by Ford Motor Company to the Gravity branch of appellee bank with instructions to collect $31.04, and secure the signature of Bray Motor Company to the conditional-sale contract. An employee of the bank secured the signature of Bray Motor Company, and, as notary public, executed the certificate of acknowledgment. Then the bank delivered the bill of lading to Bray Motor Company and sent the $31.04, invoice, and contract to Ford Motor Company, Des Moines. For said services appellee was paid twenty-five cents by Bray Motor Company. Upon receipt of the signed conditional-sale contract, Ford Motor Company sold and assigned the same to appellant. It was not filed or recorded.

In December 1940, Bray Motor Company made a conditional-sale contract of the automobile to Mr. Lucas, one of its salesmen, and on the same day sold and assigned the Lucas note and said contract to appellee bank at Gravity. In May 1941, appellant took possession of the automobile. Thereupon appellee instituted this replevin suit. The principal issue is whether or not appellee's rights, under the assignment and the conditional-sale

contract (Exhibit A) held by it, are superior to those of the prior unrecorded conditional-sale contract (Exhibit 1) held by appellant finance company.

■ I. The subsequent conditional-sale contract, Exhibit A, between Bray Motor Company, vendor, and Lucas, vendee, was regular upon its face. There was also a negotiable note from Lucas to Bray Motor Company, Exhibit B, covering the installments. It was the practice of Bray Motor Company to have Lucas (and other salesmen) execute contracts as vendees of automobiles used by Lucas as demonstrators. These automobiles were kept at Lucas' home or at Bray Motor Company garage, as was most convenient for its business, and were usually in the actual custody of Lucas. Bray Motor Company sold and assigned the notes and contracts and made the payments thereafter maturing thereon. Lucas paid nothing. When such a car was resold to a purchaser other than a salesman, Bray Motor Company would sell the car direct. Mr. Bray testified, ''The whole arrangement was simply for the convenience of handling these demonstrator units.'' In other words, this was merely an accommodation note and contract, which the parties thereto intended should acquire legal vigor by assignment from Bray Motor Company to a third party and payment therefor to Bray Motor Company.

As long as Bray Motor Company held the contract it was of no force and effect because the parties did not so intend. However, Bray Motor Company's retention of possession of the automobile would not in itself render the contract invalid. This court has said that to constitute a conditional sale *within the terms of the statute,* there must be a delivery of possession to the purchaser, with the intention of passing immediate ownership, subject only to the reservation of title to the seller as security for the purchase money. Greenlease-Lied Motors v. Sadler, 216 Iowa 302, 249 N. W. 383; Donnelly v. Mitchell, 119 Iowa 432, 436, 93 N. W. 369, 371. The phrase ''within the terms of the statute'' refers to section 10016, Code of Iowa, 1939, which provides that no conditional sale of personal property shall be valid against any creditor or purchaser of the vendee, without notice, unless the same be recorded or filed. This provision is for the protection of the rights of creditors or purchasers from the vendee.

''It is very clear that this statute in no manner changes,

as between themselves, any of the rights of the immediate parties to a conditional transfer of property, which are created or reserved by their contract." Warner v. Johnson & Hakeman, 65 Iowa 126, 127, 21 N. W. 483, 484.

Witnesses for appellee testified appellee did not know Exhibit A was not bona fide. There was some testimony to the contrary. Apparently, Bray Motor Company collected and remitted to the bank payments on various bona fide contracts purchased by the bank, as well as payments due on salesmen's contracts which it had sold to the bank. Appellee paid Bray Motor Company for this contract $745, which was its face value. Appellee subsequently collected $50 thereon.

The assignment of Exhibit A to appellee is, in part:

"For value received, the undersigned [Bray Motor Company] does hereby sell, assign and transfer to the bank above named, its right, title and interest in and to the within contract and the property covered thereby and authorizes said Sharpsburg State Savings Bank to do every act and thing necessary to collect and discharge the same."

The Lucas note, Exhibit B, was endorsed to appellee.

It is the general rule that where a conditional-sale contract and note are unconditionally sold and assigned by the vendor to a purchaser, said assignee becomes vested with the title to the property covered by said contract. 55 C. J. 1330, 1331; 24 R. C. L. 478. The assignee acquires not only the right to collect the unpaid purchase price but also all the vendor's right, title, and interest in the property.

Such assignment is in the nature of a bill of sale of such right, title, and interest. Of course, it recognizes the interest of the conditional vendee who, for most purposes, is the owner of the property. See Hansen v. Kuhn, 226 Iowa 794, 285 N. W. 249. The assignee is a purchaser within the contemplation of the recording act. See Slimmer & Thomas v. Lawler, 205 Iowa 813, 218 N. W. 516; Central Trust Co. v. Stepanek, 138 Iowa 131, 115 N. W. 891, 15 L. R. A., N. S., 1025, 128 Am. St. Rep. 175, which involve assignments of chattel mortgages.

It should be remembered that the rights of subsequent pur-

chasers as against Exhibit A are not here involved. The contest is between the subsequent contract, Exhibit A, in the hands of appellee as assignee, and appellant's prior unrecorded contract, Exhibit 1. See Swayne v. Tillotson, 148 Iowa 501, 127 N. W. 667.

Under the recording act a prior conditional sale is to be regarded as invalid, as such, against a purchaser, in the absence of notice, actual or constructive. As to such purchaser from the vendee, the condition is void and the title is considered as having passed from the prior conditional vendor to the vendee. Pash v. Weston, 52 Iowa 675, 3 N. W. 713. The question here is whether the assignment to appellee of the accommodation contract gave it the status of a purchaser as to whom appellant's prior unrecorded contract was void in the absence of notice.

As between the original vendor and vendee, the acts of the latter in making and assigning the subsequent contract may have been wrongful or fraudulent. But sales or mortgages by the original vendee are frequently wrongful or fraudulent as against his vendor. That circumstance will not defeat the rights of the purchaser without notice. The recording act declares the prior secret transfer invalid against the subsequent purchaser without notice. National Cash Register Co. v. Zangs, 127 Iowa 710, 104 N. W. 360. It does not except transfers by the party who was vendee in the prior secret contract which are wrongful or fraudulent against his vendor.

Transactions similar to those of Bray Motor Company have been passed upon by various courts. It is worthy of note that appellant, for one defense in this case, pleaded another conditional-sale contract covering this automobile, between Bray Motor Company and Lucas, made in April 1941, and assigned to appellant, under which appellant asserted its right to hold the automobile. This defense was subsequently withdrawn.

In support of its contention that appellee's rights as assignee of Exhibit A are not superior to Exhibit 1, appellant relies in part upon decisions from other jurisdictions. Such decisions show much variance, due in part to differences in statutes. Appellant cites Iowa Guarantee Mortgage Corp. v. General Motors Acceptance Corp., 62 S. D. 18, 250 N. W. 669; Rogers Lamb Co. v. Coast Securities Co., 58 Cal. App. 744, 209 P. 246; California Standard Finance Corp. v. Riverside Finance Co., 111 Cal. App.

151, 295 P. 555; Forgan v. Gordon Motor Finance Co., 350 Ill. 445, 183 N. E. 462.

None of these cases turns upon statutes which invalidate the conditions of prior secret sales. In California and Illinois (as formerly in Iowa) recordation of conditional-sale contracts was not required. A number of California decisions state that the conditional vendee has not the capacity to transfer, even to a purchaser for value without notice, a right superior to that of the conditional vendor.

The doctrine relied upon to defeat the prior contract in the foregoing cases and in most of the cases from other jurisdictions hereinafter cited (with some variations in different jurisdictions) is that where goods are conditionally sold for resale and the seller expressly or impliedly consents to such resale prior to performance of the condition, the contract is void against purchasers from the vendee for value in the ordinary course of business. 24 R. C. L. 458; annotations in 47 A. L. R. 85, 88 A. L. R. 109; section 9 of Uniform Conditional Sales Act. See, also, Crescent Chevrolet Co. v. Lewis, 230 Iowa 1074, 300 N. W. 260.

Appellant contends this case should be determined under the foregoing doctrine. This contention is not well founded. Appellee may stand upon the positive statutory declaration that appellant's prior unrecorded contract is invalid against purchasers without notice. See C. I. T. Corp. v. Furrow, 227 Iowa 961, 289 N. W. 697; General Motors Acceptance Corp. v. Whiteley, 217 Iowa 998, 252 N. W. 779.

However, it should be noted that various authorities from other jurisdictions hold or recognize that "salesman" contracts and contracts with nonexistent persons are not invalid in the hands of innocent assignees from the conditional vendor. Citizens' Sav. & Inv. Co. v. Hunt's Garage, 128 Miss. 535, 91 So. 133, dealer's contract with himself; Commercial Credit Co. v. Hardin, 175 Ark. 811, 300 S. W. 434, fraudulent conditional sale to employee; M. & M. Securities Co. v. General Motors Acceptance Corp., 230 Mo. App. 900, 79 S. W. 2d 521, conditional sales to salesman and to president of dealer; Commercial Credit Co. v. Cutler, 176 Wash. 423, 29 P. 2d 686, conditional sale to salesman; Hartford Accident & Indemnity Co. v. Callahan, 271 Mass.

556, 171 N. E. 820, fictitious contract assigned as security held chattel mortgage; Armstrong v. Greenwich Motors Corp., 116 Conn. 487, 165 A. 598, assignment of "employee" contract held chattel mortgage; General Credit, Inc. v. Universal Credit Co., 69 App. D. C. 80, 99 F. 2d 115, rights of assignee of subsequent contract superior to prior contract irrespective of the good faith of vendor and vendee; General Motors Acceptance Corp. v. Burger, 15 N. J. Misc. 489, 192 A. 364, contract with nonexistent person. See, also, annotations in 47 A. L. R. 85, and 88 A. L. R. 109.

Rights of innocent subsequent purchasers frequently have been held superior to assignees of such contracts. Rasmussen v. O. E. Lee & Co., 104 Mont. 278, 66 P. 2d 119; Kearby v. Western States Securities Co., 31 Ariz. 104, 250 P. 766; Guaranty Discount Corp. v. Bowers, 94 Ind. App. 373, 158 N. E. 231. Many of the cases from other jurisdictions turn upon the comparative innocence of the parties litigant but most of them agree that the assignee, under his assignment, has some rights against third parties.

No decision of this court directly in point has been brought to our attention. Both sides refer to Commercial Credit Co. v. Hazel, 214 Iowa 213, 242 N. W. 47. That decision is of little assistance on this point. By reason of failure to except thereto, the instructions of the trial court became the law of that case upon appeal and the discussion and decision dealt largely with the sufficiency of the evidence under the instructions as given. The question of the correctness of the instructions was not for the determination of this court and was not passed upon. Also, in Iowa Guarantee Mortgage Corp. v. Universal Credit Co., 217 Iowa 1243, 253 N. W. 23, the instructions became the law of the case and were not reviewed.

However, this court has held that where the owner of real estate makes a pretended transfer of the same to a fictitious person and a fictitious mortgage is made in said name, an innocent mortgagee or a bona fide assignee for value has rights thereunder enforceable against third parties, unless the equities of such third parties are superior. Farmers National Bank of Salem v. Fletcher, 44 Iowa 252; Blackman v. Henderson, 116 Iowa 578, 87 N. W. 655, 56 L. R. A. 902. Upon like principle we conclude that an

assignee who takes a conditional-sale contract, regular upon its face, in good faith and for value and without notice of its accommodation character, is a purchaser as against a prior unrecorded conditional-sale contract of which he is without notice and which is, therefore, invalid. See Central Trust Co. v. Stepanek, 138 Iowa 131, 115 N. W. 891, 15 L. R. A., N. S., 1025, 128 Am. St. Rep. 175.

II. Under Code section 10016, no conditional sale of personal property is valid against any creditor or purchaser of the vendee in possession without notice, unless the same be recorded or filed. The word "notice," as used in the statute, has been defined as either knowledge of the fact in question or information as to facts which would put a prudent man upon inquiry which, if prosecuted with ordinary diligence, would lead to actual knowledge of the fact in question. General Motors Acceptance Corp. v. Whiteley, 217 Iowa 998, 252 N. W. 779.

The burden was upon appellee to show it was a purchaser *without notice.* Manbeck Motor Sales Co. v. Garside, 208 Iowa 656, 226 N. W. 9; Loranz & Co. v. Smith, 204 Iowa 35, 214 N. W. 525, 53 A. L. R. 662. The bank introduced evidence of absence of knowledge of the prior conditional-sale contract. However, appellant contends the record conclusively shows the bank had such information as to put it on notice and that the court should have directed a verdict for appellant on this ground. During the year 1940, 135 or 150 new cars were financed for Bray Motor Company by appellant. Apparently, the conditional-sale contracts of all railroad shipments of automobiles to Bray Motor Company, after April 1940, were sent to appellee bank for signature of Bray Motor Company and collection of differential.

The cashier of appellee bank testified he knew appellant was financing Bray Motor Company and knew that the new cars were Ford cars that were being handled by the Bray Motor Company.

The manager of the Gravity branch bank testified he knew it was the custom for Ford Motor Company to assign the conditional-sale contracts and that appellant had some of this paper. He testified also that Bray Motor Company from time to time drew checks on the bank, payable to appellant, for amounts up to as much as $2,000 or $3,000, and that these checks were repeat

items indicating a considerable volume of business between them. "The fact that Bray Motor Company was making a great number of payments to Universal Credit Company led me to believe that they were making payment for these cars."

In the sale and assignment of Exhibit A, Bray Motor Company certified to the bank, in part:

"The undersigned certifies that the within Contract arose from the sale of the within described property, warranting that the title to said property was at the time of sale and is now vested in the undersigned free of all liens and encumbrances  *  *  *."

Some other circumstances to be considered are that Bray Motor Company was a regular customer from whom the bank frequently purchased automobile paper, that the bank paid face value for Exhibit A, and also that the bank had sufficient confidence in Bray Motor Company to grant the latter a line of credit.

█ Whether information is sufficient to put a purchaser or creditor on notice of an unrecorded instrument has been said to be a mixed question of law and fact. It is sufficient if it would put a reasonable man upon inquiry which would certainly lead to a discovery of the rights under said instrument. Aultman & Taylor Machinery Co. v. Kennedy, 114 Iowa 444, 87 N. W. 435, 89 Am. St. Rep. 373. But the statute does not require one to make inquiry or to use diligence to ascertain what is the fact. If he has such notice as to put him on inquiry, then he has actual notice. If he does not have actual notice, negligence on his part in failing to make inquiry is immaterial unless, possibly, it amounts to fraud. Moline Plow Co. v. Braden, 71 Iowa 141, 32 N. W. 247. The facts must be such as to bind the conscience of the party, to alarm him, and put him upon such inquiry as, if prosecuted, would lead him to a knowledge of the prior rights. Wilson v. Miller & Beeson, 16 Iowa 111.

Appellant relies largely upon the circumstance that in October 1940, Exhibit 1 had passed through the bank for the collection of a small differential payment and the securing of the signature of Bray Motor Company. The bank manager testified that in handling such matters he paid no attention to the automobile numbers or other details; that he merely made the collection and obtained the signature of Bray Motor Company at the proper

place on the back of the invoice; that the bank retained none of the papers and that he did not remember the details. It was unnecessary that the bank, in the performance of its service, should familiarize itself with the details of Exhibit 1. Nor should one, at his peril, be required to take notice of details of instruments handled in this incidental manner, such as the numbers of automobiles listed therein. 39 Am. Jur. 247; Daniel v. Tolon, 53 Okla. 666, 157 P. 756, 4 A. L. R. 704, annotation 4 A. L. R. 716.

Both appellant and appellee frequently bought from Bray Motor Company conditional-sale contracts upon automobiles sold by it. They were competitors for this retail-contract business. Appellee knew that appellant had contracts upon some automobiles when Bray Motor Company received them. Appellee also knew many payments had been made to appellant. Bray Motor Company stated in writing that it had title to said automobile free of all liens and encumbrances. Under the circumstances, was appellee put upon notice which required it, in good conscience, to make inquiry of appellant concerning the title of appellee's customer? We conclude that is a question upon which reasonable minds well might differ. Hence, it was for the jury. Whether or not appellee, when it purchased and paid for Exhibit A, had knowledge or notice sufficient to put it upon inquiry that Exhibit A was merely an accommodation instrument, and, as between the parties thereto, did not represent a bona fide conditional sale, was likewise a question for the jury. Handlan-Buck Mfg. Co. v. Waterloo Drop Forge Co., 173 Iowa 452, 155 N. W. 802; M. & M. Securities Co. v. General Motors Acceptance Corp., 230 Mo. App. 900, 79 S. W. 2d 521; Commercial Credit Co. v. Barney Motor Co., 10 Cal. 2d 718, 76 P. 2d 1181.

■ III. Appellant predicates error upon various instructions. One complaint is that the question of appellee's knowledge of the character of the conditional-sale contract, Exhibit A, was not presented to the jury. In the statement of the issues the jury was told appellee alleged it made a bona fide purchase of Exhibit A. Instruction 4 had reference to the notice and knowledge of appellee with reference to Exhibit 1. Said instruction charged the jury that in determining the question of appellee's knowledge it should consider, among other things, the course of

dealings between Bray Motor Company and appellee, as shown by the evidence and the facts disclosed by the evidence indicating the bona fides or good faith, or the lack thereof, in the alleged sale and execution of Exhibits A and B, and all other facts tending to throw light on the notice, if any, had by appellant of Exhibit 1.

The instructions intermingle the proposition of the absence of notice to appellee of Exhibit 1 with the proposition of appellee's lack of notice of the actual character of Exhibit A. Although these propositions are closely connected, and overlap at some points, they might have been treated separately, with more detailed reference to the latter. However, the deviation is not sufficient to warrant a reversal. It may be noted that, at appellant's request, the court submitted special interrogatories in answer to which the jury made special findings that appellee had no notice or knowledge of Exhibit 1 when it acquired Exhibit A for value.

Other errors assigned to instructions are without merit or are rendered nonprejudicial by the special findings of the jury.

IV. Although the petition alleged appellee's interest in the property was $695, the verdict and judgment was for $745, with interest. An allegation of damage for wrongful detention was not sustained by the evidence. The judgment is affirmed on condition that appellee, within thirty days from the filing of this opinion, file a remittitur reducing it to $695, with interest from May 12, 1941, and costs; otherwise it is reversed.—Affirmed on condition.

GARFIELD, C. J., and BLISS, HALE, WENNERSTRUM, MULRONEY, and MANTZ, JJ., concur.